PROFESSIONAL UNDERWRITERS INSURANCE COMPANY, demandante, reconvenida y recurrente, *v.* DISTRIBUIDORA AUTOMOTRIZ, INC., CARLOS BARNÉS, DENISSE TEXERA DE BARNÉS y su SOCIEDAD DE GANANCIALES; LUIS E. BARNÉS, RUTH C. DE BARNÉS y su SOCIEDAD DE GANANCIALES, demandados, reconvenientes y recurridos.

*Número:* RE-85-595 *Resuelto:* 7 de junio de 1988

538

*Francisco G. Bruno* y *William A. Power*, de *Sweeting, González & Cestero*, abogados de la recurrente; *César A. Hernández Colón* y *Gustavo Vázquez-Mares*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El problema central de este pleito consiste en determinar si es o no aplicable a los hechos del caso el inciso cuarto del Art. 1742 del Código Civil, 31 L.P.R.A. sec. 4916(4), norma que rige en importantes aspectos las vicisitudes de la relación obligatoria de fianza. Por los fundamentos que a continuación se expresan, revocamos en parte el dictamen de instancia.

I

■ La Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, Ley Núm. 2 de 20 de enero de 1956 (13 L.P.R.A. sec. 4001 *et seq.*), permite que un importador de automóviles debidamente afianzado posponga el pago de los arbitrios por un término de seis (6) meses a partir de la introducción de vehículos o diez (10) días (quince (15) en la actualidad) luego de la venta, lo que ocurra primero. 13 L.P.R.A. sec. 4098.

Con origen en este esquema fiscal, la demandante y recurrente Professional Underwriters Insurance Company (Professional) prestó fianza con límite de $135,000 a favor del Secretario de Hacienda para garantizar solidariamente el

pago de arbitrios por Distribuidora Automotriz, Inc. (Distribuidora), empresa dedicada a la venta de vehículos de motor en la ciudad de Guayama.[1]

Cuando una auditoría celebrada el 8 de enero de 1979 reveló que Distribuidora adeudaba arbitrios al Departamento de Hacienda por $52,547.34, la fiadora presentó demanda en cobro de dinero contra Distribuidora y sus garantizadores, y en aseguramiento de sentencia obtuvo una orden de embargo de bienes en cantidad suficiente para cobrar la suma expresada. Este remedio no llegó a ejecutarse porque la deudora ofreció como nueva garantía una cesión de cuentas a cobrar.

En correcta cronología, ya desde el 14 de diciembre de 1978, Professional había notificado a Distribuidora —con copia al Departamento de Hacienda— la cancelación de la fianza según los términos del contrato. El 5 de febrero de 1979 el Departamento de Hacienda aprobó la cancelación, efectiva el 6 de marzo del mismo año.

Los demandados no pudieron continuar las operaciones y vendieron el negocio por $133,800. Dentro de la acción civil de la fiadora iniciada el 10 de enero de 1979, Distribuidora y sus accionistas presentaron reconvención en la que alegaron que el trámite de embargo llevado a cabo frente al negocio en presencia de clientes y público, junto con la cancelación de la fianza, tuvo el efecto de ocasionarles una considerable merma

---

[1] Los codemandados Luis E. Barnés y su esposa suscribieron, a su vez, un contrato denominado "General Agreement of Indemnity" a favor de Professional Underwriters Insurance Company (Professional), mediante el cual se hacían responsables solidariamente de las sumas de dinero que ésta tuviese que satisfacer al Departamento de Hacienda bajo la fianza en cuestión. Idénticos contratos de "indemnización" fueron suscritos por el propio Luis E. Barnés en su capacidad de Presidente de Distribuidora Automotriz, Inc. (Distribuidora) y por los otros codemandados Carlos Barnés y su esposa. En tales extremos, dichos convenios simplemente incorporan los remedios de que dispone el fiador contra el deudor por efecto del pago: la acción de reembolso o indemnidad regulada por el Art. 1737 del Código Civil, 31 L.P.R.A. sec. 4911.

en los negocios, pérdida de la franquicia para la venta de autos y, en fin, el fracaso de la empresa. Reclamaron la compensación de los daños a la corporación y a sus accionistas por conceptos de pérdida de inversión y lucro cesante proyectado a cinco (5) años.

El juicio se celebró durante marzo, junio, septiembre y octubre de 1984. Se presentó extensa prueba pericial contable y el 2 de mayo de 1985 el tribunal dictó sentencia en la que ordenó a Distribuidora el pago de $2,938.77 a Professional, suma que ésta satisfizo al Departamento de Hacienda bajo los términos de la fianza. También estimó la reconvención de Distribuidora y de los accionistas concediéndoles un total de $615,160 más $10,000 en honorarios de abogado, con costas e intereses. Tras la presentación de las usuales mociones de remedios postsentencia y de memorandos de costas por ambas partes, se cursó la solicitud de revisión que nos ocupa.

## II

El problema fundamental planteado en instancia y que hoy se suscita en el recurso ante nos es el de si las actuaciones de Professional al cancelar la fianza y proceder judicialmente contra Distribuidora se ajustaron a derecho. En otras palabras, surge ante nos nuevamente —ahora sobre el fundamento de que el foro primario cometió error manifiesto en la apreciación de la prueba— si Professional tenía, al momento de presentar su demanda, una legítima causa de acción por existir una deuda sustancial que estaba vencida.

Centrado así el asunto, Professional parte de la premisa de que estuvo justificada en tomar las medidas citadas, debido a las deudas de arbitrios que Distribuidora había acumulado para fines de 1978. Distribuidora negó la existencia de dicha deuda.

Para valorar en sus justos términos las posiciones de ambas partes, hemos examinado rigurosamente el extenso

expediente de este caso. Aflora de dicho análisis que la sentencia recurrida no constituye el balance más racional, justiciero y jurídico de la totalidad de la prueba presentada. Veamos.

 Todos los contratos de garantía tienen por finalidad asegurar la satisfacción de un crédito contra los peligros de la insolvencia total o parcial del deudor. Puig Peña define la fianza como "'aquel contrato por cuya virtud una persona (denominada fiador) se obliga, frente al acreedor de una determinada obligación, a garantizar el cumplimiento de la misma, para el caso de que éste no se reintegre del deudor principal'". F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Pamplona, Ed. Aranzadi, 1976, T. IV, pág. 336. "Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste." Art. 1721 del Código Civil, 31 L.P.R.A. sec. 4871; L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 584 *et seq.*; J. Puig Brutau, *Fundamentos del Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 588 *et seq.*; V. Guilarte Zapatero, *Comentarios al Código Civil y compilaciones forales* (Dirigidos por Manuel Albaladejo), Jaén, Ed. Rev. Der. Privado, 1980, T. XXIII.

 Por su origen, la fianza puede ser convencional, legal y judicial. Art. 1722 del Código Civil, 31 L.P.R.A. sec. 4872. En principio, pueden ser afianzadas todas las obligaciones, cualquiera que sea su objeto. Atendiendo a la legislación que las regula, es posible hablar de fianza procesal, fiscal, arrendaticia, etc. Guilarte Zapatero, *op. cit.*, pág. 48.(2)

---

(2) Bajo el título de "afianzamientos mercantiles", el Código de Comercio contiene normas especiales sobre la fianza mercantil. El contenido de estos preceptos es notablemente parco. Arts. 349–352 del Código de Comercio, 10 L.P.R.A. secs. 1821–1824; J. Garrigues, *Curso de Derecho Mercantil*, Madrid, Ed. Aguirre, 1974, pág. 154. La hipótesis de la índole mercantil de la fianza que nos ocupa

 Se trata de un contrato consensual que se perfecciona por el mero consentimiento y que puede ser oneroso o gratuito, según el fiador perciba una retribución por la obligación asumida. Por otra parte, en toda relación jurídica en que interviene un fiador hay siempre tres (3) sujetos —acreedor, deudor y fiador— por lo que la dinámica obligacional es susceptible de proyectarse en varias dimensiones. El presente litigio versa sustancialmente sobre el alcance y contenido de la relación jurídica que se crea entre el deudor principal y el fiador. Concretamente, trata sobre el significado del inciso (4) del Art. 1742 del Código Civil, 31 L.P.R.A. sec. 4916(4). Dispone dicho precepto:

El fiador, *aun antes de haber pagado*, puede proceder contra el deudor principal:

(1) Cuando se ve demandado judicialmente para el pago.

(2) En caso de quiebra, concurso o insolvencia.

(3) Cuando el deudor se ha obligado a relevarle de la fianza en un plazo determinado, y este plazo ha vencido.

(4) *Cuando la deuda ha llegado a hacerse exigible, por haber cumplido el plazo en que debe satisfacerse.*

(5) Al cabo de diez (10) años, cuando la obligación principal no tiene término fijo para su vencimiento, a menos que sea de tal naturaleza que no pueda extinguirse sino en un plazo mayor de los diez (10) años.

*En todos estos casos la acción del fiador tiende a obtener relevación de la fianza o una garantía que lo ponga a cubierto de los procedimientos del acreedor y del peligro de insolvencia en el deudor.* (Énfasis suplido.) 31 L.P.R.A. sec. 4916.

---

es debatible habida cuenta de la naturaleza de la *obligación principal* afianzada: el pago de arbitrios. En cualquier caso, los preceptos del Código Civil constituyen el cuerpo normativo supletorio. *García v. The Commonwealth Ins. Co.*, 118 D.P.R. 380 (1987); L. Fernández-Gómez, *Tratado Teórico-Práctico de Derecho Comercial*, Buenos Aires, Eds. Depalma, 1987, T. III-B; V. Guilarte Zapatero, *Comentarios al Código Civil y compilaciones forales* (Dirigidos por Manuel Albaladejo), Jaén, Ed. Rev. Der. Privado, 1980, T. XXIII, pág. 49. Examinado el punto, el carácter civil o mercantil de la fianza en controversia no determina jurídicamente el desenlace del pleito.

Normalmente, "[e]l hecho que transforma la relación jurídica que media entre fiador y deudor es el pago por parte del primero de la obligación que había contraído el segundo". Puig Brutau, *op. cit.*, pág. 607. Sin embargo, antes del pago ya asisten al fiador ciertos derechos. En esencia, el Art. 1742 del Código Civil, *supra*, se reduce a una enumeración de supuestos en los que el fiador —simple o solidario— puede eludir el riesgo de los perjuicios derivados de las situaciones allí enunciadas. De acuerdo con el segundo párrafo, esta facultad del fiador para proceder contra el deudor principal antes de haber pagado toma forma clara y precisa en dos (2) acciones. Una que tiende a que se le releve de la fianza y otra a lograr una garantía que le ponga a cubierto de los riesgos enumerados. En *Acosta & Rodas, Inc. v. PRAICO*, 112 D.P.R. 583, 596 (1982), le dimos contenido a la segunda hipótesis prevista en el Art. 1742 del Código Civil, *supra*, es decir, la "quiebra, concurso o insolvencia" del deudor.

El inciso (4) del Art. 1742 del Código Civil, *supra*, se fundamenta en la *exigibilidad* de la obligación afianzada. "Llegada la exigibilidad, el tiempo transcurre en contra del fiador. La inactividad de acreedor y deudor principal (prórroga de hecho) favorece a este último, pero perjudica al fiador porque mantiene incierta su posición." A. Casanovas Mussons, *La Relación Obligatoria de Fianza*, Barcelona, Ed. Bosch, 1984, pág. 203.

La justicia de este precepto se justifica, de acuerdo con Scaevola, en que vencido el plazo, si el deudor no paga, "surge una sospecha en la dilación, y, sobre todo, el riesgo de que por momentos se vea demandado de pago el fiador": Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. XXVII, pág. 651.

■ Manresa comenta que la demora del deudor en efectuar el pago o la inercia del acreedor en reclamarlo puede aumentar "las responsabilidades del débito por intereses, gastos y otros conceptos que habrían de recaer sobre el fiador por ser un deudor subsidiario [y con mayor razón en el caso de la fianza solidaria] . . .". Es justo, pues, "que para evitar ese perjuicio se le conceda el derecho de proceder contra el deudor para ponerse a salvo de una ulterior insolvencia". J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, págs. 437–438; J.L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. II, Vol. 3, pág. 338.

■ No obstante, como bien expresan Díez-Picazo y Gullón, "el término 'relevación de la fianza' es impropio, porque el deudor carece de potestad para liberar al fiador, ya que éste se encuentra obligado frente al acreedor, único que podría relevarle de su obligación". L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 4ta ed., Madrid, Ed. Tecnos, 1985, pág. 578. En cuanto a la segunda alternativa que tiene el fiador para evitar los riesgos asumidos, es decir, la obtención de una garantía que le ponga a cubierto de los procedimientos del acreedor y le permita preservar la acción de regreso, una vez efectuado el pago, la doctrina está de acuerdo en que se trata de una postura que el deudor debe asumir voluntariamente. Ahora bien, ante la negativa injustificada del fiado, "parece que la única medida eficaz que asiste al fiador será la de trabar los bienes de aquél mediante el oportuno embargo preventivo". Guilarte Zapatero, *op. cit.*, pág. 244; L. Fernández-Gómez, *Tratado Teórico-Práctico de Derecho Comercial*, Buenos Aires, Eds. Depalma, 1987, T. III-B, pág. 60.

## III

El tribunal a quo concluyó como cuestión de hecho que a la fecha en que Professional presentó su demanda no tenía una legítima causa de acción, aunque curiosamente reconoció la lentitud y "morocidad" [*sic*] de Distribuidora en el pago de los arbitrios. Adjudicó que el 10 de enero de 1979 la deuda ascendía a $3,764.99, pero afirmó, como cuestión de derecho, que al iniciarse la acción no "había ninguna deuda" y, por lo tanto, causa de acción, ya que ésta surgió en el momento en que Professional *pagó* los $2,938.77 reclamados por el Departamento de Hacienda a tenor con los términos de la fianza.

Esta apreciación jurídica de los hechos es incorrecta. Precisamente el Art. 1742(4) del Código Civil, *supra*, prevee la posibilidad de que el fiador pueda solicitar medidas cautelares cuando vencida la deuda el deudor no la paga, sin necesidad de esperar a ser demandado o a tener que verificar el pago, ya que llegado ese momento su derecho podría resultar ilusorio. Ajustándonos a estas directrices doctrinales, tampoco tiene carácter decisivo para la solución de la cuestión litigiosa que se haya convenido una remuneración ("prima") en la órbita interna deudor-fiador. Casanovas Mussons, *op. cit.*, pág. 87; L. Enneccerus, *Derecho de Obligaciones* (B. Pérez González y J. Alguer, traductores), 3ra ed., Barcelona, Ed. Bosch, 1966, Vol. 2, 2da parte, pág. 808. En otras palabras, "el carácter oneroso o gratuito de la relación interna o preparatoria de la fianza, no se debe confundir con el carácter oneroso o gratuito de la relación externa entre fiador y acreedor, pues esta última se refiere a la fianza propiamente dicha . . .". Fernández-Gómez, *op. cit.*, pág. 10. En cualquier caso, independientemente de la gratuidad u onerosidad de la fianza, es totalmente concebible, en materia contractual, el pacto que confiere a una de las partes la facul-

tad de desistir unilateralmente del contrato sin más requisito que la mera voluntad. *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983). La alegada onerosidad de la fianza tampoco milita en contra de las facultades que al fiador confiere el Art. 1742 del Código Civil, *supra*, en casos apropiados.

Quedó demostrado documentalmente en la litis que al 10 de enero de 1979 Distribuidora debía en arbitrios vencidos la suma de $57,738.26. Previamente el Departamento de Hacienda había certificado dicha deuda en $3,764.99, pero la discrepancia fue ampliamente aclarada en el juicio.

El récord revela que, junto con el pago de los arbitrios, Distribuidora remitía al Departamento de Hacienda un formulario en el que informaba la fecha de introducción del vehículo, la fecha de la venta y la de su entrega al comprador. El término de la orden de compra y el de la entrega en ocasiones difería, ya que era necesario aguardar a que la institución crediticia que financiaba la compra aprobara el financiamiento. La teoría de Distribuidora consiste en que el evento decisivo para efectos del pago de los arbitrios es la entrega del automóvil al comprador y no la perfección del contrato de venta condicional. Se fundamenta en la expresión "venta consumada" que aparece en un boletín administrativo del Departamento de Hacienda fechado 11 de junio de 1980. Aparte de que dicho reglamento no es aplicable a los hechos de este caso, el vocablo no tiene el alcance deseado por los recurridos.

Surge claramente del testimonio del Sr. Ángel Pérez Muñoz, representante de Hacienda y quien declarara sobre todos los aspectos relativos a la responsabilidad fiscal en estos casos, que para efectos tributarios el acontecimiento culminante era la perfección de la compraventa, con independencia de la fecha de entrega del vehículo al comprador. T.E., págs. 88–89. Acontecido este suceso, comenzaba a correr el término de diez (10) días para el envío del pago del

impuesto. Tomando como fundamento los propios récord de Distribuidora suministrados al Negociado de Arbitrios por el señor Rosado (auditor de Professional), el Departamento de Hacienda finalmente certificó una deuda de $57,738.26 al 10 de enero de 1979, posteriormente reducida por pagos contabilizados después de esa fecha. T.E., pág. 8. Aun aceptando una legítima discrepancia en cuanto al enfoque en el cómputo de los arbitrios vencidos y exigibles, no fue irrazonable la acción de Professional.

Al cancelar la fianza e instar la acción civil en atención al balance de arbitrios vencidos e impagados, la fiadora no quebrantó los términos acordados. El juzgador de hechos tuvo el beneficio de una certificación inexpugnable del Departamento de Hacienda que acreditaba la exigibilidad de cuantiosos arbitrios pendientes de pago por la corporación Distribuidora. No hay fundamento en el récord para concluir que Professional se excediera en la protección de su interés con intención de dañar, o que pueda calificarse de anormal la utilización del derecho ejercido, en circunstancias que configuran el abuso del derecho. *Cf. Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663 (1979). Por el contrario, prescindió del remedio drástico pactado en el Art. 12 del convenio de indemnidad que autorizaba su intervención directa con la gerencia y control de la corporación para salvaguardar sus intereses, y de hecho prescindió también del recurso menor de embargo que, como vimos, no se practicó por haber prestado Distribuidora garantías adicionales.

La sala de instancia atribuyó el cierre y fracaso de Distribuidora al descrédito producido por el "operativo" de embargo y a la cancelación de la fianza. No es atendible el argumento de que la intención manifiesta de embargar el inventario de vehículos, al situar grúas frente al negocio, produjera suspicacia entre las personas que las vieron, porque las grúas se asocian, en la opinión pública, con todo negocio

de venta de automóviles en operación y no necesariamente con su quiebra o insolvencia, mucho menos si dichas grúas efectivamente se retiraron en menos de una hora sin llevarse vehículo alguno.

El descalabro de la corporación, a la luz de toda la prueba aportada, no se debió a acción u omisión de Professional, sino a la insuficiencia de capital y falta de liquidez que permearon sus cortos años de operación en un mercado de vehículos de motor particularmente deprimido al momento de los hechos. La situación crónica, según el contundente dictamen pericial, demuestra que los activos corrientes de la compañía no eran suficientes para liquidar sus pasivos corrientes.(3)

El Sr. Enrique González, contable y perito de Distribuidora, admitió en el juicio que para justificar un supuesto beneficio neto antes de contribuciones de $13,369 en los últimos cuatro (4) meses de 1978, utilizó un estado sin auditar preparado casi dos (2) años después del cierre de Distribuidora y a requerimiento de ésta para propósitos específicos del pleito. No observó el inventario físico ya inexistente, tampoco envió confirmaciones a los bancos ni verificó las cuentas a cobrar o a pagar como admitió hubiese sido lo deseable desde el punto de vista contable. T.E., págs. 114–118 de 21 de junio de 1984, y págs. 9–10 de 17 de septiembre de 1984.

No existe relación causal entre el daño reclamado y la conducta de la fiadora, por lo que no procede la compensación concedida. Huelga atender los demás planteamientos de la recurrente en los que cuestiona la aritmética utilizada por el tribunal a quo para contabilizar los daños.

*Se modificará la sentencia revisada a los efectos de revocar su parte II que declaró con lugar la reconvención y con-*

---

(3) Véase el informe del testigo Lucas Malavé avalado por su testimonio en corte (vista de 28 de marzo de 1985); íd., estudio de viabilidad de Jack Ernesto Hirsbrunner. Véase también el informe pericial del Dr. Mohinder Bhatia.

*denó en daños y perjuicios a la fiadora Professional. Sin embargo, será confirmada la parte I que ordenó a Distribuidora el pago de $2,938.77. Finalmente, se modificará la sentencia recurrida para imponer costas a la parte demandada aquí recurrida.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez se inhibió.