SENTENCIA
En esta ocasión nos corresponde resolver si procede confiscar la fianza prestada a favor de un acusado cuando éste deja de comparecer y luego se descubre que la identidad que proveyó a las autoridades era falsa. Por entender que, en las circunstancias de este caso, el error en la identidad del acusado constituyó un vicio del consentimiento que invalidó el contrato de fianza, y que la fiadora descansó razonablemente en la identificación provista por el Estado, revocamos la sentencia del Tribunal de Apelaciones que confirmó la confiscación de la fianza.
I
En abril de 2007, la Policía de Puerto Rico arrestó a un individuo por una alegada infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. see. 2401. Tras ser intervenido por los agentes, éste indicó que su nombre era Javier De Jesús Carrillo y proveyó una li *789 cencía de conducir del estado de California con su foto y firma. Además, presentó una tarjeta de identificación del estado de Nevada con foto y firma, y una taijeta del Seguro Social con su nombre, número y firma. Según sus identificaciones y manifestaciones a los agentes, nació el 26 de octubre de 1970 en Río Grande, Puerto Rico. Asimismo, indicó que residía en un condominio en el área de Isla Verde y proveyó la dirección correspondiente.
Con esta información, los agentes de la Policía presentaron la denuncia y se celebró una vista de causa para el arresto, al amparo de la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Luego de encontrarse causa probable para el arresto del individuo por el delito de posesión de sustancias controladas con intención de distribuir según el Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, supra, se le fijó una fianza de $100,000.
En vista de ello, se le condujo a la Oficina de Servicios con Antelación al Juicio (O.S.A.J.), donde se verificó su información personal. Al no poder prestar la fianza, fue referido a la Oficina de Servicios Técnicos de la Policía, en donde fue fichado y se le tomaron las fotografías y huellas digitales correspondientes. Por último, fue llevado a la Administración de Corrección, donde nuevamente fue fotografiado y se le tomaron las huellas digitales, para ser ingresado posteriormente al Centro de Detención Correccional de Bayamón.
Iniciado el proceso criminal en su contra, el imputado compareció en varias ocasiones al Tribunal de Primera Instancia en distintas etapas del procedimiento. En mayo de 2007 se celebró la vista preliminar, en la cual se encontró causa probable para acusarlo por el delito de posesión de una sustancia controlada con intención de distribuirla. En junio del mismo año se realizó el acto de la lectura de acusación y se señaló la fecha para el juicio. Pendiente de la celebración del juicio y aproximadamente tres meses luego de su arresto, en julio de 2007, el acusado prestó la fianza *790 fijada a través de International Fidelity Insurance Company (International) y se ordenó su excarcelación.
Llegado el día señalado para el juicio en agosto de 2007, el acusado no compareció, por lo que el foro de instancia emitió una orden para mostrar causa por la cual no se debía confiscar la fianza. International compareció al tribunal y solicitó un término para investigar sobre el paradero de De Jesús Carrillo.
Al realizar la investigación correspondiente, la fiadora se percató de que el acusado había provisto una identidad falsa y se desconocía su verdadero nombre y paradero. Cuando se comunicaron con la madre de Javier De Jesús Carrillo, ésta le indicó que el hombre que aparecía en las fotos no era su hijo y que su hijo vivía en Estados Unidos y estaba dispuesto a venir a Puerto Rico para probarlo y aclarar el asunto sobre su identidad aparentemente robada.
International también descubrió que las huellas digitales que se le tomaron al acusado no correspondían con las del verdadero Javier De Jesús Carrillo. De igual forma, al acudir al condominio en Isla Verde, que el acusado había provisto como su dirección residencial, el administrador del edificio les indicó a los investigadores que el acusado era un extranjero de nacionalidad mexicana que había alquilado un apartamento allí en diciembre de 2006 para participar de un evento deportivo que se llevó a cabo en Carolina, pero se había marchado del lugar.
Así, pues, en la vista celebrada por el foro de instancia para dilucidar el asiuxto de la confiscación de la fianza, International aceptó que no pudo dar con el paradero del acusado y que presumía que éste se había evadido de la jurisdicción. No obstante, la fiadora alertó al tribunal que había descubierto que la información provista por el acusado era falsa y se trataba de un aparente robo de identidad. Por ello, International solicitó que se le permitiera presentar prueba sobre el asunto del aparente fraude de identidad cometido por el acusado en aras de eximirle *791 del pago de la fianza. El foro de instancia, sin embargo, no accedió a esta petición. En su lugar, decretó la confiscación de la fianza, ya que la compañía no había podido presentar al acusado. Inconforme, International acudió ante el Tribunal de Apelaciones, el cual confirmó la sentencia dictada por el foro de instancia y determinó que la fiadora debió ser más diligente para corroborar la identidad del acusado.
Insatisfecha aún, International presentó el recurso que nos ocupa y señaló la comisión de varios errores. En síntesis, alegó que los tribunales a quo erraron al no exonerarla de la fianza y al no decretar la nulidad del contrato por razón de vicios del consentimiento, toda vez que medió un error esencial en la identidad del acusado. International señaló también que el foro apelativo intermedio incidió al determinar que ésta no había sido diligente al identificar al acusado previo a fiarlo y al concluir que no era suficiente descansar en la información provista en la denuncia, pues ésta era susceptible de ser enmendada en cualquier momento. Del mismo modo, adujo que el Tribunal de Apelaciones erró en su determinación de que la fiadora no había ejercido la diligencia requerida para asegurar la comparecencia del fiado, según se comprometió a hacerlo. Por último, sostuvo que el foro de instancia debió permitirle a la fiadora presentar evidencia sobre la nulidad del contrato por vicios del consentimiento.
Examinado el recurso, expedimos el auto. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
A. La Constitución del Estado Libre Asociado de Puerto Rico garantiza a todo acusado en un proceso criminal el derecho a permanecer en libertad bajo fianza, antes de mediar un fallo condenatorio. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Del mismo modo, la Regla 218 de *792 Procedimiento Criminal dispone que toda persona arrestada por cualquier delito tendrá el derecho a quedar en libertad bajo fianza hasta tanto recaiga una condena en su contra. 34 L.P.R.A. Ap. II. El propósito de este derecho es garantizar la comparecencia del acusado en las diversas etapas del procedimiento criminal celebrado en su contra y asegurar su sumisión a las órdenes y citaciones del tribunal. 34 L.P.R.A. Ap. II, R. 219(a); Pueblo v. Negrón Vázquez, 109 D.P.R. 265, 266-267 (1979).
Conforme al ordenamiento procesal vigente, la fianza se podrá prestar por una compañía autorizada para prestar fianzas o por un fiador residente en Puerto Rico que posea bienes inmuebles en la isla. Además, ésta deberá ser suscrita o reconocida ante un magistrado o secretario de un tribunal. 34 L.P.R.A. Ap. II, R. 220.
Según lo anterior, hemos resuelto que el contrato de fianza, en el contexto de un procedimiento criminal, es un acuerdo entre el Estado y el fiador mediante el cual éste último se compromete a garantizar la presencia del imputado de delito en todas las etapas del proceso judicial llevado en su contra. Pueblo v. Colón, 161 D.P.R. 254, 260 (2004); Pueblo v. Cía. de Fianzas de P.R., 139 D.P.R. 206, 211 (1995); Pueblo v. Félix Avilés, 128 D.P.R. 468, 480 (1991). Como parte de este acuerdo, el fiador accede a la confiscación del monto de la fianza a favor del Estado si la persona fiada incumple con las órdenes del tribunal. Pueblo v. Soto Ortiz, 151 D.P.R. 619, 626 (2000); Pueblo v. Félix Avilés, supra. En vista del compromiso que hace el fiador de garantizar la comparecencia del acusado, hemos resuelto que su responsabilidad va más allá de prestar la fianza. En específico, queda obligado a tomar parte activa en el proceso penal para estar al tanto del paradero del fiado y así poder asegurarse de que éste comparecerá al tribunal cuando se le requiera. Pueblo v. Colón, supra, págs. 260-261.
Según las Reglas de Procedimiento Criminal, ante la incomparecencia o incumplimiento del acusado con las con *793 diciones impuestas por el tribunal, se le ordenará al fiador mostrar causa por la cual no deba confiscarse la fianza. Si la explicación resulta satisfactoria para el tribunal, podrá dejar la fianza sin efecto. De lo contrario, dictará sentencia sumaria en contra del fiador y ordenará su confiscación. No obstante, la sentencia dictada no será firme ni ejecutable hasta cuarenta días después de haberse notificado, por lo que podrá dejarse sin efecto si el fiador lleva al acusado ante el tribunal en este término. 34 L.P.R.A. Ap. II, R. 227(a); Pueblo v. Cía. de Fianzas de P.R., supra; Pueblo v. Newport Bonding & Surety Co., 145 D.P.R. 546 (1998).
De modo similar, se dispone que, antes de que sea ejecutada la sentencia, el tribunal tendrá discreción para dejarla sin efecto, si el fiador ha llevado al acusado ante el tribunal y éste puede constatarlo a su satisfacción. Esta solicitud deberá hacerse en un término razonable, pero nunca después de transcurridos seis meses de haberse registrado la sentencia. 34 L.RR.A. Ap. II, R. 227(a).
A pesar de que la fianza para garantizar la comparecencia de un acusado se suscita en el contexto de un procedimiento criminal, su confiscación y ejecución se rigen por un procedimiento especial de carácter civil, cuya finalidad es hacer cumplir con una obligación contractual del fiador a favor del Estado. Pueblo v. Martínez Hernández, 158 D.P.R. 388, 397 (2003).
B. Por otro lado, el contrato de fianza es un acuerdo entre dos partes regulado por los preceptos del derecho civil. En lo pertinente, el Código Civil dispone que la fianza es el mecanismo mediante el cual una parte se obliga a pagar o cumplir por un tercero, en caso de que éste no lo haga. 31 L.P.R.A. see. 4871. Se trata de un contrato consensual que se perfecciona por el mero consentimiento, sin estar sujeto a los requisitos de forma o exigencias particulares. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 590; J.R. Vélez Torres, Curso de Derecho Civil: Derecho de *794 Contratos, San Juan, Rev. Jur. U.I.A., 1990, T. IV, Vol. II, pág. 536. Véase, además, Professional Underwriters v. Dis. Automotriz, 121 D.P.R. 536, 543 (1988). No obstante, la fianza siempre debe ser expresa, pues su existencia no se presume. 31 L.P.R.A. sec. 4876.
En lo que respecta al contrato de fianza otorgado en el contexto de un procedimiento penal, este contrato es sui géneris, ya que en su interpretación y ejecución se combinan asuntos de derecho civil y de derecho procesal penal. Así lo hemos destacado en el pasado al reconocer que, a pesar de que su existencia y eficacia están supeditadas a las eventualidades de un proceso criminal, se trata de una obligación contractual que otorga urna garantía de carácter monetario. Pueblo v. Martínez Hernández, supra, pág. 401. Según ello, surge una figura de naturaleza mixta que integra aspectos del derecho civil con elementos propios de las acciones penales.(1)
De manera particular, en el contrato de fianza suscitado en el ámbito del procedimiento criminal se impone el mencionado requisito de que un magistrado o secretario de un tribunal autorice la fianza. Regla 220 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Ello así, en aras de que éste verifique si se cumplen con las exigencias que se requieren para que una persona o entidad pueda fungir como fiador. Véase, además, la Regla 221 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
Asimismo, las Reglas de Procedimiento Criminal que disponen el proceso para la confiscación de la fianza ante la incomparecencia del acusado nos refieren a las Reglas de Procedimiento Civil y establecen que, una vez la sentencia confiscatoria adviene firme y ejecutoria, ésta se hará valer del modo ordinario que se ejecutan las sentencias civiles. Véanse: la Regla 227 de Procedimiento Criminal, *795 34 L.P.R.A. Ap. II; Pueblo v. Del Valle, 35 D.P.R. 478, 480 (1926). En ese sentido, hemos resuelto que la ejecución de la sentencia confiscatoria de la fianza es un proceso civil, en el cual se admite la imposición de intereses, según dis-pone la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para todas aquellas sentencias en las cuales se ordene el pago de dinero. Pueblo v. Martínez Hernández, supra, pág. 402.
Así, pues, el ordenamiento procesal relacionado con la fianza incorpora asuntos propios del derecho civil en lo referente a la ejecución del contrato. En atención a que la prestación de la fianza se perfecciona mediante un contrato, debemos examinar los elementos de este acuerdo, a la luz de la doctrina general de la contratación.
C. Es una norma ampliamente conocida que existen tres requisitos indispensables para la validez de los contratos: el consentimiento de los contratantes, el objeto cierto que sea materia del contrato y la causa de la obligación que se establezca. 31 L.P.R.A. sec. 3391; S.L.G. Francis-Acevedo v. SIMED, 176 D.P.R. 372 (2009); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 154 (1996).
En vista de lo anterior, se ba establecido que el consentimiento será nulo cuando se preste por error, violencia, intimidación o dolo. 31 L.P.R.A. sec. 3404; Pérez Rosa v. Morales Rosado, 172 D.P.R. 216 (2007). El Art. 1218 del Código Civil establece, en lo pertinente, que para que el error invalide el consentimiento deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato o sobre aquellas condiciones esenciales de ésta que principalmente hubiesen dado motivo a celebrarlo. 31 L.P.R.A. sec. 3405. Véanse, además: Girod Lube v. Ortiz Rolón, 94 D.P.R. 406, 414 (1967); Capó Caballero v. Ramos, 83 D.P.R. 650, 672 (1961).
Según indica Puig Brutau, cuando ocurre este tipo de error —llamado “error propio” o “vicio del consentimiento”— la declaración de la voluntad de la parte contratante concuerda con su intención de contratar, mas su decisión se *796 basa en una representación que no es real, provocada por la ignorancia o información falsa. Puig Brutau, op. cit., 3ra ed., Vol. I, 1988, pág. 81. Es decir, la parte tiene la intención de llevar a cabo el contrato sobre determinado objeto, pero desconoce que éste, o sus condiciones esenciales, no son las que se le representan. Por lo tanto, de haber sabido de antemano la verdadera situación, no habría realizado el negocio jurídico.
Así, pues, se han establecido ciertos requisitos para que el error propio invalide el consentimiento del contratante de forma tal que el contrato sea ineficaz. En primer lugar, el error ha de ser esencialmente determinante de la voluntad del que lo alega, de modo que de haber conocido la inexactitud que dio lugar al error, la voluntad del contratante sería distinta. De otra parte, debe existir una relación causal entre el error y la finalidad que perseguía el contratante, de manera que el propósito que éste tenía se vea frustrado como consecuencia del error que afectó su voluntad. Por último, el error nunca se presumirá y deberá ser excusable, por lo que aquel que alegue su existencia tendrá la carga de probarlo. Vélez Torres, op. cit., págs. 51-53.
A su vez, para determinar si el error es excusable, debemos evaluar si se pudo haber evitado mediante una diligencia razonable por la parte que lo invoca, tomando en cuenta si las personas involucradas en la contratación son conocedoras o expertas en la materia objeto del contrato. Capó Caballero v. Ramos, supra, pág. 677; Puig Brutau, op. cit., Vol. I, pág. 91. De esta forma, aun cuando el error recaiga sobre un elemento esencial, sólo será suficiente para anular el negocio si se considera que es un error excusable, causado por hechos desconocidos que la parte que lo invoca no pudo descubrir mediante un grado mediano de cuidado. Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 812 (1975); Girod Lube v. Ortiz Rolón, supra, págs. 414-415; Capó Caballero v. Ramos, supra, pág. 673.
*797 Con estos preceptos en mente, pasemos a analizar concretamente esta controversia.
HH HH
A. International alega, esencialmente, que los foros inferiores erraron al determinar la validez del contrato de fianza y ordenar su confiscación, ya que al momento de suscribir este acuerdo mediaron vicios del consentimiento en cuanto a la identidad de la persona fiada. En atención a ello, aduce que el contrato de fianza es nulo. Para evaluar tales aseveraciones, debemos considerar si se configuraron los tres requisitos esenciales que exige el Código Civil para todos los contratos: consentimiento, objeto y causa. 31 L.P.R.A. see. 3391.
El consentimiento en estos casos es aquel que prestan el Estado y la compañía de fianzas al acordar que, ante la incomparecencia del acusado, la fiadora entregará la cantidad acordada a favor del Estado. En el caso de autos, esta intención quedó evidenciada mediante la comparecencia de ambas partes al otorgamiento del documento de fianza, en el cual International ofreció garantizar la comparecencia del acusado, y el Estado, a través del juez o secretario que suscribe el documento, aceptó que se prestara la fianza. Véase 31 L.P.R.A. see. 3401. De otra parte, el objeto del contrato en este tipo de acuerdos es la comparecencia del acusado que la fiadora se compromete a garantizar. íntimamente relacionado con ello, la causa de estos contratos es la garantía de que, en caso de que el acusado no comparezca a los señalamientos del tribunal, la fiadora entregará la cantidad pactada al Estado. Así, pues, de primera intención, el contrato de fianza otorgado por International a favor de Javier De Jesús Carrillo aparenta cumplir con los tres requisitos mencionados.
Ahora bien, la fiadora alega que su consentimiento estuvo viciado al haber prestado la fianza por una persona *798 que aparentemente cometió fraude en cuanto a su identidad. Para atender este señalamiento, debemos evaluar si, en efecto, el error en la identidad del fiado constituyó un error propio sobre el objeto del contrato o sobre sus condiciones esenciales que invalidó el consentimiento prestado por la compañía, según dispone el Art. 1218 del Código Civil, 31 L.P.R.A. see. 3405.
Según mencionáramos, el objeto del contrato fue la comparecencia del acusado que garantizó la fiadora. Sin duda, la identidad de la persona es urna condición esencial que da motivo a la celebración del contrato de fianza entre el fiador y el Estado, toda vez que es imposible garantizar la comparecencia de alguien sin conocer su nombre, información y circunstancias personales. Por lo tanto, el hecho de que la persona quién fue fiada no era quien dijo ser y su información y datos personales correspondían a un tercero ajeno al proceso ciertamente constituye un error sobre las condiciones esenciales del objeto del contrato. Se trata, pues, del error propio capaz de invalidar el consentimiento de quien accede a prestar la fianza. No obstante, a la luz de la doctrina esbozada, corresponde evaluar si este error cumple con los requisitos necesarios para que se invalide el contrato.
En primer lugar, debemos determinar si se trata de un error sobre un elemento del contrato que fue esencialmente determinante de la voluntad de quien reclama la existencia del error. En el caso de autos, al ser la comparecencia de un acusado el propósito central del contrato, resulta evidente que la identidad de la persona es un factor esencial para decidir si se presta o no la fianza a su favor, por lo que entendemos que ese requisito fue satisfecho.
Asimismo, hay que considerar sí existe un nexo causal entre el error alegado y la finalidad de la contratación. Si la finalidad del contrato de fianza es garantizar la comparecencia de una persona, y resulta que la identidad de ésta es errónea, este error crea un impedimento para llevar a *799 cabo el fin del contrato. Por lo tanto, este factor también está presente en este caso.
De otra parte, la condición de que quien alegue el error tenga el peso de la prueba para demostrar su existencia -pues el error no se presumetambién se ha cumplido en el caso de autos. Es evidente que la fiadora es quien tiene el peso de la prueba de demostrar que el error alegado efectivamente ocurrió y que no pudo evitarlo. International descubrió el error, luego de una investigación realizada para dar con el paradero de Javier De Jesús Carrillo, una vez éste dejó de comparecer al procedimiento y así lo ha intentado demostrar ante los foros judiciales. En la vista ante el Tribunal de Primera Instancia, la fiadora solicitó la oportunidad de presentar prueba sobre las diligencias realizadas que le llevaron al descubrimiento del error en la identidad del fiado, así como de sus esfuerzos para identificarlo correctamente y localizarlo.(2) No obstante, el foro de instancia no lo permitió.
A pesar de ello, entendemos que surge del expediente que la fiadora ha cumplido con probar satisfactoriamente que, en efecto, el acusado proveyó una identidad falsa que vició su consentimiento al suscribir el contrato de fianza. Además, el Procurador General ha admitido en sus comparecencias que se trató de un fraude de identidad que no pudo ser detectado ni por el Estado ni por el fiador hasta que el acusado desapareció, por lo que estimamos que la existencia del error ha quedado probada.
Por último, resta determinar si se trata de un error excusable. Como señaláramos, ello conlleva realizar una evaluación de la diligencia desplegada por quien invoca el error y constatar que éste no fue causado por la negligencia *800 de esta parte. Específicamente, debemos resolver si International fue diligente al identificar al fiado, previo a otorgar el contrato de fianza. Para ello, debemos examinar las circunstancias particulares del caso y los hechos pertinentes relacionados con la prestación de la referida fianza.
B. En el caso de autos, International prestó la fianza a favor de Javier De Jesús Carrillo poco más de tres meses, luego de que éste fuera arrestado por la Policía de Puerto Rico. Durante esos tres meses, el acusado estuvo todo el tiempo bajo la custodia del Estado. En particular, luego de su arresto por la Policía de Puerto Rico, el Departamento de Justicia —a través de sus fiscales— la Oficina de Servicios con Antelación al Juicio y, finalmente, la Administración de Corrección tuvieron su control y, de hecho, permaneció confinado suficiente tiempo para que el Estado investigara sobre su identidad. Por lo tanto, debemos evaluar si fue razonable que la fiadora descansara en la identificación que realizó el Estado al momento de prestar su consentimiento al contrato de fianza, en aras de determinar si tal error fue excusable para fines de la validez del contrato.
Para ello, resulta pertinente destacar que, en su comparecencia ante nos, el Procurador General señala que el Estado no cometió un error al identificar al acusado, sino que fue víctima del fraude perpetrado por éste al apropiarse de la identidad de un tercero. El Estado admite que el fraude fue imposible de detectar, aun cuando verificó la identidad del acusado mediante los mecanismos disponibles: el requerimiento de los documentos de identificación, la toma de fotografías y huellas digitales y la verificación de la información por la O.S.A. J.(3) Así, pues, cuando International *801 prestó la fianza, el acusado llevaba tres meses encarcelado en una institución penal y durante ese período el Estado no se percató de que se trataba de una identidad falsa. Fue precisamente en estos hechos que descansó la fiadora al suscribir el contrato de fianza en nombre del acusado.
Adviértase, además, que no se trata de un mero error en el nombre de la persona, sino de toda una identidad falsa, incluyendo direcciones, fecha y lugar de nacimiento y número de Seguro Social, herramientas esenciales para localizar a una persona. En este caso, al utilizar esta información, International dio con el paradero del verdadero Javier De Jesús Carrillo. De haber sido el acusado realmente Javier De Jesús Carrillo, International habría cumplido con el deber de garantizar su comparecencia. Se trata, sin embargo, de un aparente robo de identidad en el que la persona acusada asumió la identidad de otro, proveyó todos los documentos corroborativos de ésta como si fueran suyos y logró burlar a todas las partes involucradas en este proceso.
En ese sentido, el Tribunal de Apelaciones concluyó que la información y los datos contenidos en la denuncia y la acusación —los cuales International entendió correctos— no son garantía absoluta de su corrección, pues éstos podrían ser modificados mediante la enmienda correspondiente. No obstante, creemos que lo anterior pierde de perspectiva que no estamos ante un error en el nombre que aparece en los documentos, el cual ciertamente se puede enmendar en cualquier momento, sino ante un fraude de identidad que impidió a la fiadora cumplir con su deber.
En vista de estos hechos particulares, no podemos exigirle a la fiadora que llevara a cabo gestiones extraordinarias para detectar el fraude perpetrado previo a otorgar el contrato de fianza, ni cuestionar la confianza en los métodos de identificación y procesos de corroboración utilizados por al menos cuatro entidades del Estado para mantener al acusado en una institución penal aguardando su día en *802 corte. Por ello, entendemos que la fiadora fue razonablemente diligente al tomar como cierta la identificación realizada por el Estado.
En su sentencia, el Tribunal de Apelaciones expuso que la fiadora “debió hacer un ejercicio razonable de solicitarle al imputado una identificación con foto u otro medio de identificación para asegurarse que era quien decía ser o corroborara su verdadera identidad”. Sentencia del Tribunal de Apelaciones, pág. 14. No obstante, debemos recalcar que, en este caso, el acusado se encontraba confinado en rma institución penal. Como es sabido, al ingresar a la cárcel, los confinados son despojados de todas sus pertenencias, incluyendo sus documentos de identificación, y éstas pasan a la custodia del Estado. Es el Estado, entonces, quien provee a la fiadora los mencionados documentos. En vista de ello, las identificaciones con foto fueron provistas a International y de éstas no se desprendía que fueran falsas o correspondieran a una identidad robada. Si la diligencia exigible en estos casos se limitara a verificar las tarjetas de identificación, es evidente que ello, no sólo se cumplió, sino que fue insuficiente para advertir el error en la identidad del acusado.
En el caso de autos, el individuo que se hizo llamar Javier De Jesús Carrillo incurrió en conducta que afectó los intereses de todas las partes involucradas en el proceso. El Estado vio afectado su interés y objetivo de enjuiciar a las personas que cometen delitos, mientras que la fiadora puso en riesgo una cantidad sustancial de dinero para garantizar un deber imposible de cumplir. El mero hecho de que la fiadora reciba una prima a cambio de prestar la fianza no es razón suficiente para castigarle por las acciones de un acusado que engañó a todos y evadió su responsabilidad ante el proceso criminal instado en su contra. Ello, más aún, cuando la fiadora descansó razonablemente en la información recopilada, verificada y provista por el Estado, el cual, dicho sea de paso, es la otra parte contratante.
*803 Las Reglas de Procedimiento Criminal no disponen ex-presamente la situación de invalidez del contrato de fianza por fraude en la identidad del fiado como una situación que exima al fiador de pagar la cantidad fijada. Sin embargo, y según analizáramos anteriormente, la fianza en el contexto del proceso penal no se presta en el vacío, sino que se viabiliza a través de un contrato. Pueblo v. Colón, supra, pág. 260. Es por esto que la doctrina general de contratos en este caso nos obliga a concluir que el consentimiento prestado por la fiadora estuvo viciado por el error en la identidad del acusado. En vista de ello, y tras determinar que el error fue excusable, no podemos sujetar a la compañía de fianzas al cumplimiento de los términos de un acuerdo en el cual no contaba con todos los elementos necesarios para prestar adecuadamente su anuencia.(4)
En el curso ordinario de sus negocios, International otorgó su consentimiento para otorgar un contrato con el Estado con el fin de prestar la fianza para garantizar la comparecencia de Javier De Jesús Carrillo. No obstante, su decisión de prestar esa fianza estuvo basada en una representación falsa, en cuanto a la identidad de esta persona. Por consiguiente, resolvemos que en vista de que *804 el acusado estuvo bajo la custodia del Estado durante tres meses y su identidad fue verificada y aceptada por varios organismos gubernamentales —incluyendo aquellos cuya función principal es corroborar la información personal de los acusados— International no incurrió en falta de diligencia al identificar y fiar a Javier De Jesús Carrillo. Ello constituyó un error excusable que vició su consentimiento al momento de suscribir el contrato de fianza, por lo que éste es nulo. En vista de lo anterior, no procede la confiscación de la fianza ante la incomparecencia del acusado.
Ahora bien, aclaramos que lo resuelto hoy no constituye —de forma alguna— una carta blanca a las fiadoras para descansar ciegamente en la información recopilada por el Estado y dejar de ejercer un esfuerzo diligente y razonable para identificar adecuadamente a las personas cuya comparecencia garantizan. Tampoco se debe considerar como una norma absoluta que exima de responsabilidad a las fiadoras en cualquier instancia en que resulte que el fiado proveyó información falsa o cometió fraude de identidad. Los tribunales deberán evaluar los hechos de cada caso para determinar si la diligencia desplegada fue razonable a la luz de la totalidad de las circunstancias.
IV
Por los fundamentos expuestos, revocamos la sentencia del Tribunal de Apelaciones y la confiscación de la fianza ordenada por el Tribunal de Primera Instancia.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Señora Pabón Charneco emitió una opinión disidente, a la cual se unen los Jueces Asociados Señores Martínez Torres y Kolthoff Caraballo.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Cabe señalar que los contratos de fianza criminal se rigen también por las disposiciones del Código de Seguros referentes a los contratos de garantía. Véase 26 L.P.R.A. secs. 2201-2205.

 Para ello, se propuso presentar los testimonios de la Sra. Rosa Carrillo Feliciano, madre del verdadero Javier De Jesús Carrillo, el Sr. José Rivera, administrador del condominio La Mancha en Isla Verde, y los Sres. Daniel Pizarro Flores y Frankie López Bonano, agente investigador y apoderado, respectivamente, de la compañía fiadora. Consta en el expediente un resumen de lo que hubiese declarado cada uno de estos testigos.

 Cabe señalar que una de las funciones principales de dicha oficina es “[rlecopilar y verificar información sobre el historial socioeconómico, escolaridad, empleo, residencia, lazos con la comunidad y cualquier otra información, incluyendo la adicción o dependencia del alcohol o sustancias controladas, que le sirva al tribunal de guía para determinar los medios para poner en libertad provisional a toda persona arrestada por imputársele la comisión de un delito”. 4 L.P.R.A. see. 1304.

 A modo ilustrativo, consideramos prudente señalar que en algunas jurisdicciones de Estados Unidos se ha aceptado la falsedad o el fraude en la identidad del fiado como una justificación válida para eximir a las fiadoras del pago de la fianza. Por ejemplo, en el estado de Georgia existe legislación que establece que los tribunales podrán, discrecionalmente, relevar de responsabilidad a un fiador cuando el fiado utilizó un nombre falso mientras estuvo encarcelado, excepto cuando el fiador sabía o debió haber sabido tal hecho, siempre que le demuestre al tribunal que actuó diligentemente. Véase O.C.G.A. sec. 17-6-31(d)(2); R. Bozman, Bonds and Recognizances: Release Surety from Liability at Discretion of the Court When the Principal Uses a False Name, 14 Ga. St. U.L. Rev. 106 (1997).
Asimismo, en Louisiana se resolvió que, en un caso en que el imputado proveyó el nombre de su hermano a las autoridades, la fiadora “reasonably relied on the information obtained by the Sheriff’s Office; thus, it should not be penalized because that information was erroneous”. State v. Turner, 893 So. 2d 900, 904 (2004).
Otras jurisdicciones utilizan el criterio de la discreción judicial al momento de determinar si procede exonerar a un fiador de responsabilidad, aun cuando no se haya podido entregar al acusado al tribunal. Véanse, e.g.: Fed. R. Crim. R, Rs. 46(f)(2)(B), 46(g); Colorado Revised Statutes sec. 16-4-112(5)(h); Idaho Code sec. 19-2917, Idaho Crim. Rule 46(e)(4); Utah Code Ann. sec. 77-20b-101 (4)(e); State v. Quick Release Bail Bonds, 167 P.3d 788 (Idaho App. 2007); People v. Escalera, 121 P.3d 306 (Colo. App. 2005).