

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | |
| --- | --- |
| Recurrido | Certiorari |
| v. | |
| Javier De Jesús Carrillo | 2009 TSPR 189 |
| Acusado | |
| International Fidelity | 177 DPR ____ |
| Insurance Company | |
| Fiadora-Peticionaria | |

Número del Caso: CC-2008-486

Fecha: 30 de diciembre de 2009

Tribunal de Apelaciones:

     Región Judicial de Carolina, Panel XIII

Juez Ponente:

     Hon. Luis A. Rosario Villanueva

Abogado de la Parte Peticionaria:

     Lcda. Magda Enid Ralat Ballester

Oficina del Procurador General:

     Lcda. María T. Caballero García
     Procuradora General Auxiliar

Materia: Art. 401 SC, Art. 252 CP, Art. 284 CP

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correccione s del proceso de compilación y publicación oficial de las decisio nes del Tribunal. Su istribución electrónica se hace como u n servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.

Javier De Jesús Carrillo           CC-2008-486   Certiorari

    Acusado

International Fidelity
Insurance Company

    Fiadora-Peticionaria


SENTENCIA

San Juan, Puerto Rico, a 30 de diciembre de 2009.

En esta ocasión nos corresponde resolver si procede confiscar la fianza prestada a favor de un acusado cuando éste deja de comparecer y luego se descubre que la identidad que proveyó a las autoridades era falsa. Por entender que en las circunstancias de este caso el error en la identidad del acusado constituyó un vicio del consentimiento que invalidó el contrato de fianza, y que la fiadora descansó razonablemente en la identificación provista por el Estado, revocamos la sentencia del Tribunal de Apelaciones que confirmó la confiscación de la fianza.

I.

En abril de 2007 la Policía de Puerto Rico arrestó a un individuo por una alegada infracción al Art. 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. Tras ser intervenido por los agentes, éste indicó que su nombre era Javier De Jesús Carrillo y proveyó una licencia de conducir del estado de California con su foto y firma. Además, presentó una tarjeta de identificación del estado de Nevada con foto y firma y una tarjeta de seguro social con su nombre, número y firma. Según sus identificaciones y manifestaciones a los agentes, nació el 26 de octubre de 1970 en Río Grande, Puerto Rico. Asimismo, indicó que residía en un condominio en el área de Isla Verde y proveyó la dirección correspondiente.

Con esta información, los agentes de la Policía presentaron la denuncia y se celebró una vista de causa para arresto, al amparo de la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Luego de encontrarse causa probable para el arresto del individuo por el delito de posesión de sustancias controladas con intención de distribuir bajo el Artículo 401 de la Ley de Sustancias Controladas, *supra*, se le fijó una fianza de $100,000.

En vista de ello, se le condujo a la Oficina de Servicios con Antelación al Juicio (O.S.A.J.), donde se verificó su información personal. Al no poder prestar la fianza, fue referido a la Oficina de Servicios Técnicos de la Policía, en donde fue fichado y se le tomaron las correspondientes

fotografías y huellas digitales. Por último, fue llevado a la Administración de Corrección donde nuevamente fue fotografiado y se le tomaron las huellas digitales, para ser posteriormente ingresado al Centro de Detención Correccional de Bayamón.

Iniciado el proceso criminal en su contra, el imputado compareció en varias ocasiones al Tribunal de Primera Instancia en distintas etapas del procedimiento. En mayo de 2007 se celebró la vista preliminar, en la cual se encontró causa probable para acusarlo por el delito de posesión de una sustancia controlada con intención de distribuirla. En junio del mismo año se realizó el acto de lectura de acusación y se señaló la fecha para el juicio. Pendiente de la celebración del juicio y aproximadamente tres meses luego de su arresto, en julio de 2007 el acusado prestó la fianza fijada a través de International Fidelity Insurance Company (International) y se ordenó su excarcelación.

Llegado el día señalado para el juicio en agosto de 2007, el acusado no compareció, por lo que el foro de instancia emitió una orden de mostrar causa por la cual no se debía confiscar la fianza. International compareció al tribunal y solicitó un término para investigar sobre el paradero de De Jesús Carrillo.

Al realizar la correspondiente investigación, la fiadora se percató de que el acusado había provisto una identidad falsa y se desconocía su verdadero nombre y paradero. Cuando se comunicaron con la madre de Javier De Jesús Carrillo, ésta

le indicó que el hombre que aparecía en las fotos no era su hijo y que su hijo vivía en Estados Unidos y estaba dispuesto a venir a Puerto Rico para probarlo y aclarar el asunto sobre su identidad aparentemente robada.

International también descubrió que las huellas digitales que se le tomaron al acusado no correspondían con las del verdadero Javier De Jesús Carrillo. De igual forma, al acudir al condominio en Isla Verde que el acusado había provisto como su dirección residencial, el administrador del edificio les indicó a los investigadores que el acusado era un extranjero de nacionalidad mexicana que había alquilado un apartamento allí en diciembre de 2006 para participar de un evento deportivo que se llevó a cabo en Carolina, pero se había marchado del lugar.

Así, pues, en la vista celebrada por el foro de instancia para dilucidar el asunto de la confiscación de la fianza, International aceptó que no pudo dar con el paradero del acusado y que presumía que éste se había evadido de la jurisdicción. No obstante, la fiadora alertó al tribunal que había descubierto que la información provista por el acusado era falsa y se trataba de un aparente robo de identidad. Por ello, International solicitó que se le permitiera presentar prueba sobre el asunto del aparente fraude de identidad cometido por el acusado en aras de eximirle del pago de la fianza. El foro de instancia, sin embargo, no accedió a esta petición. En su lugar, decretó la confiscación de la fianza ya que la compañía no había podido presentar al acusado.

Inconforme, International acudió ante el Tribunal de Apelaciones, el cual confirmó la sentencia dictada por el foro de instancia y determinó que la fiadora debió ser más diligente para corroborar la identidad del acusado.

Insatisfecha aún, International presentó el recurso que nos ocupa y señaló la comisión de varios errores. En síntesis, alegó que los tribunales a quo erraron al no exonerarla de la fianza y al no decretar la nulidad del contrato por razón de vicios del consentimiento, toda vez que medió un error esencial en la identidad del acusado. International señaló también que el foro apelativo intermedio incidió al determinar que ésta no había sido diligente al identificar al acusado previo a fiarlo y al concluir que no era suficiente descansar en la información provista en la denuncia, pues ésta era susceptible de ser enmendada en cualquier momento. Del mismo modo, adujo que el Tribunal de Apelaciones erró en su determinación de que la fiadora no había ejercido la diligencia requerida para asegurar la comparecencia del fiado según se comprometió a hacerlo. Por último, sostuvo que el foro de instancia debió permitirle a la fiadora presentar evidencia sobre la nulidad del contrato por vicios del consentimiento.

Examinado el recurso, expedimos el auto. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

A.

La Constitución del Estado Libre Asociado de Puerto Rico garantiza a todo acusado en un proceso criminal el derecho a permanecer en libertad bajo fianza antes de mediar un fallo condenatorio. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Del mismo modo, la Regla 218 de Procedimiento Criminal dispone que toda persona arrestada por cualquier delito tendrá derecho a quedar en libertad bajo fianza hasta tanto recaiga una condena en su contra. 34 L.P.R.A. Ap. II, R. 218. El propósito de dicho derecho es garantizar la comparecencia del acusado en las diversas etapas del procedimiento criminal celebrado en su contra y asegurar su sumisión a las órdenes y citaciones del tribunal. 34 L.P.R.A. Ap. II, R. 219(a); Pueblo v. Negrón Vázquez, 109 D.P.R. 265, 266-67 (1979).

Conforme al ordenamiento procesal vigente, la fianza se podrá prestar por una compañía autorizada para prestar fianzas o por un fiador residente en Puerto Rico que posea bienes inmuebles en la isla. Además, ésta deberá ser suscrita o reconocida ante un magistrado o secretario de un tribunal. 34 L.P.R.A. Ap. II, R. 220.

En virtud de lo anterior, hemos resuelto que el contrato de fianza en el contexto de un procedimiento criminal es un acuerdo entre el Estado y el fiador mediante el cual éste último se compromete a garantizar la presencia del imputado de delito en todas las etapas del proceso judicial llevado en

su contra. Pueblo v. Colón, 161 D.P.R. 254, 260 (2004); Pueblo v. Cía. de Fianzas de P.R., 139 D.P.R. 206, 211 (1995); Pueblo v. Félix Avilés, 128 D.P.R. 468, 480 (1991). Como parte de dicho acuerdo, el fiador accede a la confiscación del monto de la fianza a favor del Estado si la persona fiada incumple con las órdenes del tribunal. Pueblo v. Soto Ortiz, 151 D.P.R. 619, 626 (2000); Pueblo v. Félix Avilés, *supra*. En vista del compromiso que hace el fiador de garantizar la comparecencia del acusado, hemos resuelto que su responsabilidad va más allá de prestar la fianza. En específico, queda obligado a tomar parte activa en el proceso penal para estar al tanto del paradero del fiado y así poder asegurarse que éste comparecerá al tribunal cuando se le requiera. Pueblo v. Colón, *supra*, págs. 260-61.

Según las Reglas de Procedimiento Criminal, ante la incomparecencia o incumplimiento del acusado con las condiciones impuestas por el tribunal, se le ordenará al fiador mostrar causa por la cual no deba confiscarse la fianza. Si la explicación resulta satisfactoria para el tribunal, podrá dejar la fianza sin efecto. De lo contrario, dictará sentencia sumaria en contra del fiador y ordenará su confiscación. No obstante, la sentencia dictada no será firme ni ejecutable hasta cuarenta días después de haberse notificado, por lo que podrá dejarse sin efecto si el fiador lleva al acusado ante el tribunal en dicho término. 34 L.P.R.A. Ap. II, R. 227(a); Pueblo v. Rivera Segarra, *supra*;

Pueblo v. Newport Bonding & Surety Co., 145 D.P.R. 546 (1998).

De modo similar, se dispone que, antes de que sea ejecutada dicha sentencia, el tribunal tendrá discreción para dejarla sin efecto si el fiador ha llevado al acusado ante el tribunal y éste puede constatarlo a su satisfacción. Dicha solicitud deberá hacerse dentro de un término razonable, pero nunca después de transcurridos seis meses de haberse registrado la sentencia. 34 L.P.R.A. Ap. II, R. 227(a).

A pesar de que la fianza para garantizar la comparecencia de un acusado se suscita en el contexto de un procedimiento criminal, su confiscación y ejecución se rigen por un procedimiento especial de carácter civil cuya finalidad es hacer cumplir una obligación contractual del fiador a favor del Estado. Pueblo v. Martínez Hernández, 158 D.P.R. 388, 397 (2003).

B.

Por otro lado, el contrato de fianza es un acuerdo entre dos partes regulado por los preceptos del derecho civil. En lo pertinente, el Código Civil dispone que la fianza es el mecanismo mediante el cual una parte se obliga a pagar o cumplir por un tercero, en caso de que éste no lo haga. 31 L.P.R.A. sec. 4871. Se trata de un contrato consensual que se perfecciona por el mero consentimiento, sin estar sujeto a requisitos de forma o exigencias particulares. J. Puig Brutau, Fundamentos de Derecho Civil, Tomo II, Vol. II, 1982, pág. 590; J.R. Vélez Torres, Curso de Derecho Civil: Derecho

de Contratos, Tomo IV, Vol. II, 1990, pág. 536. Véase, además, Professional Underwriters v. Dis. Automotriz, 121 D.P.R. 536, 543 (1988). No obstante, la fianza siempre debe ser expresa, pues su existencia no se presume. 31 L.P.R.A. sec. 4876.

En lo que respecta al contrato de fianza otorgado en el contexto de un procedimiento penal, dicho contrato es sui géneris, ya que en su interpretación y ejecución se combinan asuntos de derecho civil y de derecho procesal penal. Así lo hemos destacado en el pasado al reconocer que, a pesar de que su existencia y eficacia están supeditadas a las eventualidades de un proceso criminal, se trata de una obligación contractual que otorga una garantía de carácter monetario. Pueblo v. Martínez Hernández, supra, pág. 401. En virtud de ello, surge una figura de naturaleza mixta que integra aspectos de derecho civil con elementos propios de las acciones penales.[1]

De manera particular, en el contrato de fianza suscitado en el ámbito del procedimiento criminal se impone el mencionado requisito de que un magistrado o secretario de un tribunal autorice la fianza. Regla 220 de Procedimiento Criminal, supra. Ello así, en aras de que éste verifique si se cumplen las exigencias que se requieren para que una persona o entidad pueda fungir como fiador. Véase, además, Regla 221 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

---

[1] Cabe señalar que los contratos de fianza criminal se rigen también por las disposiciones del Código de Seguros referentes a los contratos de garantía. Véase 26 L.P.R.A. secs. 2201-05.

Asimismo, las Reglas de Procedimiento Criminal que disponen el proceso para la confiscación de la fianza ante la incomparecencia del acusado nos refieren a las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, y establecen que, una vez la sentencia confiscatoria adviene firme y ejecutoria, ésta se hará valer del modo ordinario que se ejecutan las sentencias civiles. Véanse, Regla 227 de Procedimiento Civil, *supra*; Pueblo v. Del Valle, 35 D.P.R. 478, 480 (1926). En ese sentido, hemos resuelto que la ejecución de la sentencia confiscatoria de la fianza es un proceso civil en el cual se admite la imposición de intereses según dispone la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para todas aquellas sentencias en las cuales se ordene el pago de dinero. Pueblo v. Martínez Hernández, *supra*, pág. 402.

Así, pues, el ordenamiento procesal relacionado con la fianza incorpora asuntos propios del derecho civil en lo referente a la ejecución del referido contrato. En atención a que la prestación de la fianza se perfecciona mediante un contrato, debemos examinar los elementos de dicho acuerdo a la luz de la doctrina general de la contratación.

C.

Es una norma ampliamente conocida que existen tres requisitos indispensables para la validez de los contratos: consentimiento de los contratantes, objeto cierto que sea materia del contrato y causa de la obligación que se establezca. 31 L.P.R.A. sec. 3391; Acevedo Mangual v. SIMED,

res. el 14 de julio de 2009, 2009 T.S.P.R. 122; Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 154 (1996).

En vista de lo anterior, se ha establecido que el consentimiento será nulo cuando se preste por error, violencia, intimidación o dolo. 31 L.P.R.A. sec. 3404; Pérez Rosa v. Morales Rosado, res. el 28 de septiembre de 2007, 2007 T.S.P.R. 171. El Artículo 1218 del Código Civil establece, en lo pertinente, que para que el error invalide el consentimiento deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato o sobre aquellas condiciones esenciales de ésta que principalmente hubiesen dado motivo a celebrarlo. 31 L.P.R.A. sec. 3405. Véanse, además, Girod Lube v. Ortiz Rolón, 94 D.P.R. 406, 414 (1967); Capó Caballero v. Ramos, 83 D.P.R. 650, 672 (1961).

Según indica Puig Brutau, cuando ocurre este tipo de error -llamado error propio o vicio del consentimiento- la declaración de la voluntad de la parte contratante concuerda con su intención de contratar, mas su decisión se basa en una representación que no es real, provocada por ignorancia o información falsa. J. Puig Brutau, Fundamentos de Derecho Civil, Tomo II, Vol. I, 1988, pág. 81. Es decir, la parte tiene la intención de llevar a cabo el contrato sobre determinado objeto, pero desconoce que éste, o sus condiciones esenciales, no son las que se le representan. Por tanto, de haber sabido de antemano la verdadera situación, no habría realizado el negocio jurídico.

Así, pues, se han establecido ciertos requisitos para que el error propio invalide el consentimiento del contratante de forma tal que el contrato sea ineficaz. En primer lugar, el error ha de ser esencialmente determinante de la voluntad del que lo alega, de modo que de haber conocido la inexactitud que dio lugar al error, la voluntad del contratante sería distinta. De otra parte, debe existir una relación causal entre el error y la finalidad que perseguía el contratante, de manera que el propósito que éste tenía se vea frustrado como consecuencia del error que afectó su voluntad. Por último, el error nunca se presumirá y deberá ser excusable, por lo que aquel que alegue su existencia tendrá la carga de probarlo. Vélez Torres, op. cit., págs. 51-53.

A su vez, para determinar si el error es excusable, debemos evaluar si se pudo haber evitado mediante una diligencia razonable por la parte que lo invoca, tomando en cuenta si las personas involucradas en la contratación son conocedoras o expertas en la materia objeto del contrato. Capó Caballero v. Ramos, *supra*, pág. 677; Puig Brutau, op. cit., Vol. I, pág. 91. De esta forma, aun cuando el error recaiga sobre un elemento esencial, sólo será suficiente para anular el negocio si se considera que es un error excusable, causado por hechos desconocidos que la parte que lo invoca no pudo descubrir mediante un grado mediano de cuidado. Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 812 (1975); Girod Lube v. Ortiz Rolón, *supra*, págs. 414-15; Capó Caballero v. Ramos, *supra*, pág. 673.

Con estos preceptos en mente, pasemos a analizar concretamente la controversia ante nuestra consideración.

III.

A.

International alega, esencialmente, que los foros inferiores erraron al determinar la validez del contrato de fianza y ordenar su confiscación, toda vez que al momento de suscribir dicho acuerdo mediaron vicios del consentimiento en cuanto a la identidad de la persona fiada. En atención a ello, aduce que el contrato de fianza es nulo. Para evaluar tales aseveraciones, debemos considerar si se configuraron los tres requisitos esenciales que exige el Código Civil para todos los contratos: consentimiento, objeto y causa. 31 L.P.R.A. sec. 3391.

El consentimiento en estos casos es aquel que prestan el Estado y la compañía de fianzas al acordar que, ante la incomparecencia del acusado, la fiadora entregará la cantidad acordada a favor del Estado. En el caso de autos, dicha intención quedó evidenciada mediante la comparecencia de ambas partes al otorgamiento del documento de fianza, en el cual International ofreció garantizar la comparecencia del acusado, y el Estado, a través del juez o secretario que suscribe el documento, aceptó que se prestara la referida fianza. Véase 31 L.P.R.A. sec. 3401. De otra parte, el objeto del contrato en este tipo de acuerdos es la comparecencia del acusado que la fiadora se compromete a garantizar. Íntimamente relacionado con ello, la causa de

dichos contratos es la garantía de que, en caso de que el acusado no comparezca a los señalamientos del tribunal, la fiadora entregará la cantidad pactada al Estado. Así, pues, de primera intención, el contrato de fianza otorgado por International a favor de Javier De Jesús Carrillo aparenta cumplir con los tres requisitos antes mencionados.

Ahora bien, la fiadora alega que su consentimiento estuvo viciado al haber prestado la fianza por una persona que aparentemente cometió fraude en cuanto a su identidad. Para atender dicho señalamiento, debemos evaluar si, en efecto, el error en la identidad del fiado constituyó un error propio sobre el objeto del contrato o sobre sus condiciones esenciales que invalidó el consentimiento prestado por la compañía, según dispone el Artículo 1218 del Código Civil, *supra*.

Según mencionáramos, el objeto del contrato fue la comparecencia del acusado que garantizó la fiadora. Sin duda, la identidad de la persona es una condición esencial que da motivo a la celebración del contrato de fianza entre el fiador y el Estado, toda vez que es imposible garantizar la comparecencia de alguien sin conocer su nombre, información y circunstancias personales. Por lo tanto, el hecho de que la persona a ser fiada no era quien dijo ser y su información y datos personales correspondían a un tercero ajeno al proceso ciertamente constituye un error sobre las condiciones esenciales del objeto del contrato. Se trata, pues, del error propio capaz de invalidar el consentimiento

de quien accede a prestar la fianza. No obstante, a la luz de la doctrina antes esbozada, corresponde evaluar si dicho error cumple con los requisitos necesarios para que se invalide el contrato.

En primer lugar, debemos determinar si se trata de un error sobre un elemento del contrato que fue esencialmente determinante de la voluntad de quien reclama la existencia del error. En el caso de autos, al ser la comparecencia de un acusado el propósito central del contrato, resulta evidente que la identidad de la persona es un factor esencial para decidir si se presta o no la fianza a su favor, por lo que entendemos que dicho requisito fue satisfecho.

Asimismo, hay que considerar si existe un nexo causal entre el error alegado y la finalidad de la contratación. Si la finalidad del contrato de fianza es garantizar la comparecencia de una persona, y resulta que la identidad de ésta es errónea, dicho error crea un impedimento para llevar a cabo el fin del contrato. Por tanto, este factor también está presente en el caso ante nuestra consideración.

De otra parte, la condición de que el que alegue el error tenga el peso de la prueba para demostrar su existencia –pues el error no se presume– también se ha cumplido en el caso de autos. Es evidente que la fiadora es quien tiene el peso de la prueba de demostrar que el error alegado efectivamente ocurrió y que no pudo evitarlo. International descubrió el error luego de una investigación realizada para dar con el paradero de Javier De Jesús Carrillo una vez éste dejó de

comparecer al procedimiento y así lo ha intentado demostrar ante los foros judiciales. En la vista ante el Tribunal de Primera Instancia, la fiadora solicitó la oportunidad de presentar prueba sobre las diligencias realizadas que le llevaron al descubrimiento del error en la identidad del fiado, así como de sus esfuerzos para identificarlo correctamente y localizarlo.[2] No obstante, el foro de instancia no lo permitió.

A pesar de ello, entendemos que surge del expediente que la fiadora ha cumplido con probar satisfactoriamente que, en efecto, el acusado proveyó una identidad falsa que vició su consentimiento al suscribir el contrato de fianza. Además, el Procurador General ha admitido en sus comparecencias que se trató de un fraude de identidad que no pudo ser detectado ni por el Estado ni por el fiador hasta que el acusado desapareció, por lo que estimamos que la existencia del error ha quedado probada.

Por último, resta determinar si se trata de un error excusable. Como señaláramos, ello conlleva realizar una evaluación de la diligencia desplegada por el que invoca el error y constatar que éste no fue causado por la negligencia de dicha parte. Específicamente, debemos resolver si International fue diligente al identificar al fiado previo a

---

[2] Para ello, se propuso presentar los testimonios de la Sra. Rosa Carrillo Feliciano, madre del verdadero Javier De Jesús Carrillo, el Sr. José Rivera, administrador del Condominio La Mancha en Isla Verde, y los Sres. Daniel Pizarro Flores y Frankie López Bonano, agente investigador y apoderado, respectivamente, de la compañía fiadora. Consta en el expediente un resumen de lo que hubiese declarado cada uno de estos testigos.

otorgar el contrato de fianza. Para ello, debemos examinar las circunstancias particulares del caso y los hechos pertinentes relacionados con la prestación de la referida fianza.

## B.

En el caso de autos, International prestó la fianza a favor de Javier De Jesús Carrillo poco más de tres meses luego de que éste fuera arrestado por la Policía de Puerto Rico. Durante esos tres meses, el acusado estuvo todo el tiempo bajo la custodia del Estado. En particular, luego de su arresto por la Policía de Puerto Rico, el Departamento de Justicia -a través de sus fiscales-, la Oficina de Servicios con Antelación al Juicio y, finalmente, la Administración de Corrección tuvieron su control y, de hecho, permaneció confinado suficiente tiempo para que el Estado investigara sobre su identidad. Por lo tanto, debemos evaluar si fue razonable que la fiadora descansara en la identificación que realizó el Estado al momento de prestar su consentimiento al contrato de fianza, en aras de determinar si tal error fue excusable para fines de la validez del contrato.

Para ello, resulta pertinente destacar que en su comparecencia ante nos el Procurador General señala que el Estado no cometió un error al identificar al acusado, sino que fue víctima del fraude perpetrado por éste al apropiarse de la identidad de un tercero. El Estado admite que el fraude fue imposible de detectar, aun cuando verificó la identidad del acusado mediante los mecanismos disponibles: el

requerimiento de los documentos de identificación, la toma de fotografías y huellas digitales y la verificación de la información por la O.S.A.J.[3] Así, pues, cuando International prestó la fianza, el acusado llevaba tres meses encarcelado en una institución penal y durante ese período el Estado no se percató de que se trataba de una identidad falsa. Fue precisamente en estos hechos que descansó la fiadora al suscribir el contrato de fianza en nombre del acusado.

Adviértase, además, que no se trata de un mero error en el nombre de la persona, sino de toda una identidad falsa, incluyendo direcciones, fecha y lugar de nacimiento y número de seguro social, herramientas esenciales para localizar a una persona. En este caso, al utilizar dicha información, International dio con el paradero del verdadero Javier De Jesús Carrillo. De haber sido el acusado realmente Javier De Jesús Carrillo, International habría cumplido con el deber de garantizar su comparecencia. Se trata, sin embargo, de un aparente robo de identidad en el que la persona acusada asumió la identidad de otro, proveyó todos los documentos corroborativos de ésta como si fueran suyos y logró burlar a todas las partes involucradas en este proceso.

---

[3] Cabe señalar que una de las funciones principales de dicha oficina es "recopilar y verificar información sobre el historial socioeconómico, escolaridad, empleo, residencia, lazos con la comunidad y cualquier otra información, incluyendo la adicción o dependencia del alcohol o sustancias controladas, que le sirva al tribunal de guía para determinar los medios para poner en libertad provisional a toda persona arrestada por imputársele la comisión de un delito." 4 L.P.R.A. sec. 1304.

En ese sentido, el Tribunal de Apelaciones concluyó que la información y los datos contenidos en la denuncia y la acusación -los cuales International entendió correctos- no son garantía absoluta de su corrección, pues éstos podrían ser modificados mediante la enmienda correspondiente. No obstante, somos del criterio que lo anterior pierde de perspectiva que no estamos ante un error en el nombre que aparece en los referidos documentos, el cual ciertamente se puede enmendar en cualquier momento, sino ante un fraude de identidad que impidió a la fiadora cumplir con su deber.

En vista de estos hechos particulares, no podemos exigirle a la fiadora que llevara a cabo gestiones extraordinarias para detectar el fraude perpetrado previo a otorgar el contrato de fianza, ni cuestionar la confianza en los métodos de identificación y procesos de corroboración utilizados por al menos cuatro entidades del Estado para mantener al acusado en una institución penal aguardando su día en corte. Por ello, entendemos que la fiadora fue razonablemente diligente al tomar como cierta la identificación realizada por el Estado.

En su sentencia, el Tribunal de Apelaciones expuso que la fiadora "debió hacer un ejercicio razonable de solicitarle al imputado una identificación con foto u otro medio de identificación para asegurarse que era quien decía ser o corroborara su verdadera identidad". Sentencia del Tribunal de Apelaciones, pág. 14. No obstante, debemos recalcar que, en este caso, el acusado se encontraba confinado en una

institución penal. Como es sabido, al ingresar a la cárcel, los confinados son despojados de todas sus pertenencias, incluyendo sus documentos de identificación, y éstas pasan a la custodia del Estado. Es el Estado, entonces, quien provee a la fiadora los mencionados documentos. En vista de ello, las identificaciones con foto fueron provistas a International y de éstas no se desprendía que fueran falsas o correspondieran a una identidad robada. Si la diligencia exigible en estos casos se limitara a verificar las tarjetas de identificación, es evidente que ello, no sólo se cumplió, sino que fue insuficiente para advertir el error en la identidad del acusado.

En el caso de autos, el individuo que se hizo llamar Javier De Jesús Carrillo incurrió en conducta que afectó los intereses de todas las partes involucradas en el proceso. El Estado vio afectado su interés y objetivo de enjuiciar a las personas que cometen delitos, mientras que la fiadora puso en riesgo una cantidad sustancial de dinero para garantizar un deber imposible de cumplir. El mero hecho de que la fiadora reciba una prima a cambio de prestar la fianza no es razón suficiente para castigarle por las acciones de un acusado que engañó a todos y evadió su responsabilidad ante el proceso criminal instado en su contra. Ello, más aún, cuando la fiadora descansó razonablemente en la información recopilada, verificada y provista por el Estado, el cual, dicho sea de paso, es la otra parte contratante.

Las Reglas de Procedimiento Criminal no contemplan expresamente la situación de invalidez del contrato de fianza por fraude en la identidad del fiado como una situación que exima al fiador de pagar la cantidad fijada. Sin embargo, y según analizáramos anteriormente, la fianza en el contexto del proceso penal no se presta en el vacío, sino que se viabiliza a través de un contrato. Pueblo v. Colón, *supra*, pág. 260. Es por esto que la doctrina general de contratos en este caso nos obliga a concluir que el consentimiento prestado por la fiadora estuvo viciado por el error en la identidad del acusado. En vista de ello, y tras determinar que el error fue excusable, no podemos sujetar a la compañía de fianzas al cumplimiento de los términos de un acuerdo en el cual no contaba con todos los elementos necesarios para prestar su anuencia adecuadamente.[4]

---

[4] A modo ilustrativo, consideramos prudente señalar que en algunas jurisdicciones de Estados Unidos se ha aceptado la falsedad o fraude en la identidad del fiado como una justificación válida para eximir a las fiadoras del pago de la fianza. Por ejemplo, en el estado de Georgia existe legislación que establece que los tribunales podrán, discrecionalmente, relevar de responsabilidad a un fiador cuando el fiado utilizó un nombre falso mientras estuvo encarcelado, excepto cuando el fiador sabía o debió haber sabido tal hecho, siempre que le demuestre al tribunal que actuó diligentemente. Véase O.C.G.A. sec. 17-6-31 (d)(2); R. Bozman, Criminal Procedure: Bonds and Recognizances: Release Surety from Liability at Discretion of the Court When the Principal Uses a False Name, 14 Ga. St. U.L. Rev. 106 (1997).

Asimismo, en Louisiana se resolvió que, en un caso en que el imputado proveyó el nombre de su hermano a las autoridades, la fiadora "reasonably relied on the information obtained by the Sheriff's Office; thus, it should not be penalized because that information was erroneous". State v. Turner, 893 So. 2d 900, 904 (2004).

En el curso ordinario de sus negocios, International otorgó su consentimiento para otorgar un contrato con el Estado con el fin de prestar la fianza para garantizar la comparecencia de Javier De Jesús Carrillo. No obstante, su decisión de prestar la referida fianza estuvo basada en una falsa representación en cuanto a la identidad de dicha persona. Por consiguiente, resolvemos que en vista de que el acusado estuvo bajo la custodia del Estado durante tres meses y su identidad fue verificada y aceptada por varios organismos gubernamentales –incluyendo aquellos cuya función principal es corroborar la información personal de los acusados–, International no incurrió en falta de diligencia al identificar y fiar a Javier De Jesús Carrillo. Ello constituyó un error excusable que vició su consentimiento al momento de suscribir el contrato de fianza, por lo que éste es nulo. En vista de lo anterior, no procede la confiscación de la fianza ante la incomparecencia del acusado.

Ahora bien, aclaramos que lo resuelto en el día de hoy no constituye –de forma alguna– una carta blanca a las fiadoras para descansar ciegamente en la información recopilada por el Estado y dejar de ejercer un esfuerzo diligente y razonable para identificar adecuadamente a las personas cuya

_____

Otras jurisdicciones utilizan el criterio de la discreción judicial al momento de determinar si procede exonerar a un fiador de responsabilidad, aun cuando no se haya podido entregar al acusado al tribunal. Véanse, e.g., Fed. R. Crim. P., Rs. 46(f)(2)(B), 46(g); Colorado Revised Statues sec. 16-4-112 (5)(h); Idaho Code sec. 19-2917, Idaho Crim. Rule 46 (e)(4); Utah Code Ann. sec. 77-20b-101 (4)(e); State v. Beck, 167 P.3d 788 (Idaho App. 2007); People v. Escalera, 121 P.3d 306 (Colo. App. 2005).

comparecencia garantizan. Tampoco se debe considerar como una norma absoluta que exima de responsabilidad a las fiadoras en cualquier instancia en que resulte que el fiado proveyó información falsa o cometió fraude de identidad. Los tribunales deberán evaluar los hechos de cada caso para determinar si la diligencia desplegada fue razonable a la luz de la totalidad de las circunstancias.

IV.

Por los fundamentos antes expuestos, revocamos la sentencia del Tribunal de Apelaciones y la confiscación de la fianza ordenada por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió Opinión Disidente a la cual se unen los Jueces Asociados señores Martínez Torres y Kolthoff Caraballo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

     v.

Javier De Jesús Carrillo          CC-2008-486   *Certiorari*

     Acusado

International Fidelity

Insurance Company

     Fiadora-Peticionaria

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco a la que se le une el Juez Asociado señor Martínez Torres y el Juez Asociado señor Kolthoff Caraballo.

San Juan, Puerto Rico, a 30 de diciembre de 2009.

Disiento de la Sentencia dictada por el Tribunal respecto a la determinación de que no procede la confiscación de la fianza por existir un vicio en el consentimiento que invalidó el contrato. Esto tras descubrirse que la identidad que el acusado proveyó a las autoridades era falsa; información en la que descansó la fiadora para medir su riesgo. Discrepo por entender que, aunque el error cometido es uno esencial o determinante para la celebración del contrato, la fiadora no desplegó la diligencia exigible a una persona conocedora de este negocio ni cumplió con sus obligaciones según dispuesto en las Reglas de

Procedimiento Criminal pertinentes y las interpretaciones provistas por este Tribunal.

I

El 13 de abril de 2007, un individuo identificado como Javier De Jesús Carrillo fue intervenido y arrestado por alegada violación al Artículo 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. Esta persona proveyó al agente del orden público una licencia de conducir con foto y firma del estado de California, una tarjeta de seguro social con su nombre, número y firma, y una tarjeta de identificación del estado de Nevada con foto y firma. Además, informó que residía en un condominio ubicado en el área de Isla Verde. Cabe apuntar que ninguno de los documentos presentados corroboraba la dirección ofrecida verbalmente por el acusado.

El 14 de abril de 2007, el Ministerio Público sometió la denuncia a base de la información suministrada. Ese mismo día fue celebrada la vista de determinación de causa para arresto, en la que se determinó causa probable para el mismo y se fijó una fianza por la suma de cien mil ($100,000) dólares. Conforme al proceso correspondiente, el individuo fue entrevistado e investigado por un oficial de

la Oficina de Servicios con Antelación al Juicio (OSAJ).[5]

Al no poder prestar la cantidad impuesta, éste fue fichado

por la Oficina de Servicios Técnicos de la Policía y,

posteriormente, ingresado al Centro de Detención

Correccional de Bayamón.

El 23 de julio de 2007, *International Fidelity*

*Insurance Company* (International o "la fiadora"), prestó la

fianza correspondiente a favor del acusado tras descansar

en la información obtenida por el Estado. No obstante,

---

[5] El procedimiento de evaluación e investigación de la información suministrada por los imputados es llevado conforme al Reglamento sobre procedimientos uniformes para la evaluación, recomendación de libertad provisional, supervisión y seguimiento de imputados de delito bajo la jurisdicción de la Oficina de Servicios con Antelación al Juicio, Reglamento Núm. 5991, Departamento de Estado, 6 de julio de 1999. Éste incluye una entrevista inicial con un Oficial de la Unidad de Evaluación y Recomendación de la Oficina de Servicios con Antelación al Juicio (OSAJ) quien recoge la información demográfica ofrecida por el imputado y la verifica en los sistemas de información disponibles. Tal como expone el Artículo 6(c) de la Ley Núm. 177 de 12 de agosto de 1995, según enmendada, conocida como Ley de la Oficina de Servicios con Antelación al Juicio, 4 L.P.R.A. sec. 1307, éstos incluyen el Sistema de Información de Justicia Criminal (SIJC), el National Crime Information Center (NCIC), el Vehicle and Driver Information System (VADIS/DAVID), la Oficina de la Administración de los Tribunales (OAT) y cualesquiera otros sistemas de información análogos.

Una vez realizada dicha búsqueda, el Oficial cumplimenta el formulario *Informe* (que se nutre también de información provista por el imputado en una segunda entrevista) y que se somete con las debidas recomendaciones al tribunal luego de evaluar la información de acuerdo con los *Criterios de Evaluación de Riesgo para Recomendaciones al Tribunal y supervisión por OSAJ*. No obstante, **no es hasta que el tribunal decreta la libertad provisional bajo la jurisdicción de la Oficina** que ésta toma fotografías del liberado y las registra en el *Registro de Cámara Instantánea.* Además, le solicita al liberado en la denominada "entrevista social" ciertos documentos con el propósito de verificar sus datos personales. Éstos incluyen: cartas de recomendación de vecinos, amigos o familiares con dirección y teléfonos distintos, recibo reciente de luz, agua o teléfono, certificado de buena conducta, acta de nacimiento, entre otros. **Es en esta etapa que las referencias y la información provistas por el liberado son, pues, verificadas por los recursos humanos de la Oficina, incluyendo la realización de las investigaciones de campo pertinentes.** Esta información sirve para determinar los niveles de supervisión requeridos. Reglamento sobre procedimientos uniformes para la evaluación, recomendación de libertad provisional, supervisión y seguimiento de imputados de delito bajo la jurisdicción de la Oficina de Servicios con Antelación al Juicio, *supra*, págs. 42-43, 54.

éste no compareció al juicio en su fondo. Como consecuencia, el tribunal emitió una orden de mostrar causa por la cual no se debía confiscar la fianza, siendo notificada ésta el 13 de agosto de 2007. En dicha fecha International comenzó una investigación para dar con el paradero del acusado. La fiadora, entonces, se percató de que la identidad ofrecida por éste no concordaba con la del verdadero Javier De Jesús Carrillo y lo comunicó al tribunal.

En una segunda vista para mostrar causa – celebrada el 13 de noviembre de 2007 luego de que la fiadora solicitara tiempo adicional para localizar al fiado – el tribunal consideró que no medió explicación satisfactoria para el incumplimiento de las condiciones de la fianza por lo que dictó sentencia sumaria contra la fiadora confiscando el importe de la referida fianza. Ésta fue notificada el 6 de diciembre de 2007.

Inconforme, International recurrió al Tribunal de Apelaciones y tras la confirmación de la sentencia recurrida por tal foro, acude ante nos.

II

En estrecha relación con la presunción de inocencia que cobija a todo acusado, la Sección 11 del Artículo II de la Constitución de Puerto Rico garantiza que:

> Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.

> La detención preventiva antes del juicio no excederá de seis meses.  Las fianzas y las multas no serán excesivas. Art. II, Sec. 11, Const. P.R, L.P.R.A., Tomo 1, ed. 2008, pág. 343.

En nuestro ordenamiento este derecho se hace efectivo a través del contrato de fianza, sujeto a las exigencias de las Reglas de Procedimiento Criminal, ya sea mediante el reconocimiento de un fiador o por medio del depósito del importe de la fianza por el acusado. No obstante, del acusado no prestar la misma, el Estado lo mantendrá bajo su custodia por un periodo que – por disposición constitucional – no podrá exceder de los seis meses. *Sánchez Álvarez v. González*, 78 D.P.R. 849 (1955).

El contrato de fianza criminal es uno *sui generis* entre el fiador y el Estado por el que el Estado transfiere la custodia del acusado al fiador y **éste último se compromete a garantizar la comparecencia** del acusado durante todo el procedimiento criminal seguido en su contra. *Pueblo v. Colón*, 161 D.P.R. 254 (2004); *Pueblo v. Martínez Hernández*, 158 D.P.R. 388 (2003); *Pueblo v. Newport Bonding & Surety Co.*, 145 D.P.R. 546 (1998).  No obstante, como todo contrato de fianza siempre hay tres partes involucradas – acreedor, deudor-fiado y fiador – lo

que da lugar a una serie de relaciones jurídicas entre dichos sujetos que no pueden ser descartadas ligeramente.[6] J. Alventosa del Río, *La Fianza: Ámbito de Responsabilidad*, Granada, Ed. Comares, 1988, pág. 11.

En el contexto criminal, el contrato de fianza tiene como objetivo asegurar la comparecencia de la persona acusada ante el tribunal a todas las etapas del proceso judicial. Regla 219 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.219. Es por tal motivo que la responsabilidad del fiador no se limita a la prestación de la fianza. Como parte de las particularidades del contrato de fianza criminal, el fiador está obligado a tomar parte activa en todo el proceso penal para estar al tanto del paradero del imputado de delito y asegurar su sumisión al proceso criminal pendiente. *Pueblo v. Colón*, *supra,* págs. 260-61; *Pueblo v. Martínez Hernández*, *supra*. Esto presupone, por tanto, un alto grado de diligencia de su parte, particularmente en aquellos casos en los que la fiadora es una corporación que se dedica lucrativamente a ese negocio. *Pueblo v. Colón*, *supra,* pág. 266.

---

[6] "Es normal que el contrato de fianza se celebre entre el acreedor de otro y el fiador, por ser las partes acreedora y deudora en la relación accesoria de fianza.  Sin embargo, la razón o causa determinante de que alguien se obligue a pagar una deuda ajena está en la relación que media entre el fiador y el deudor principal, que deberá calificarse en cada caso según su propia naturaleza […], con independencia de la relación de fianza que es la existente entre acreedor y fiador". J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra. ed. Barcelona, Ed. Bosch, 1988, Tomo II, vol. I pág. 596.

Toda vez que la custodia del acusado ha sido transferida al fiador, la incomparecencia del custodio ante el tribunal representa el incumplimiento del fiador de sus obligaciones. *Pueblo v. Colón*, *supra*. Por dicho incumplimiento deberá responder con la garantía ofrecida según el procedimiento de confiscación de fianza establecido en la Regla 227(a) de Procedimiento Criminal, *supra*, R. 227(a). Dicho precepto dispone que de no mediar una explicación satisfactoria para el incumplimiento, el tribunal procederá a dictar una sentencia sumaria contra los fiadores y confiscará el importe de la fianza.

## III

En el caso de autos, la fiadora aduce que medio vicio en su consentimiento por error y que éste conlleva la anulabilidad del contrato. Esto porque confió en la identificación provista por el Estado que mediante varias de sus instituciones intervino, entrevistó y mantuvo la custodia del individuo bajo una identidad falsa. Apunta, además, que le es imposible ubicar y arrestar al acusado debido al error de identidad cometido por la "crasa falta de diligencia" del Estado que le "indujo a error" haciéndola entrar a un contrato bajo falsa creencia. Por tanto, procedemos a profundizar en el estudio del vicio en el consentimiento por error y su aplicación en el contrato de fianza.

Todo contrato requiere del consentimiento de los contratantes, de un objeto cierto que sea materia del contrato y de causa. 31 L.P.R.A. sec. 3391. A tenor con estos requisitos, el Artículo 1217 del Código Civil expone que "[s]erá nulo el consentimiento prestado por error, violencia, intimidación o dolo". 31 L.P.R.A. sec. 3404. En particular, el error como vicio en el consentimiento ocurre cuando, "la ignorancia o una falsa información ha inducido al declarante a decidir algo que no es lo que realmente le hubiese interesado". J. Puig Brutau, *Fundamentos de Derecho Civil*, *supra*, pág. 81. No obstante, no todo error invalida el consentimiento y, por consiguiente, el contrato. Nuestro ordenamiento requiere, en lo pertinente, que éste recaiga:

> …sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo.
>
> El error sobre la persona sólo invalidará el contrato cuando la consideración a ella hubiere sido la causa principal del mismo.
>
> El simple error de cuenta sólo dará lugar a su corrección. 31 L.P.R.A. sec. 3405.

Cónsono con lo anterior, el error como causa de invalidación del contrato es excepcional por presumirse la

validez del contrato y del consentimiento. Por tanto, quien invoca el error tiene la carga de probarlo. *Capó Caballero v. Ramos*, 83 D.P.R. 650, 673 (1961); L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* 6ta ed. Madrid, Ed. Thomson/Civitas, 2007, pág. 209; J.R. Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, San Juan, Revista Jurídica de la Universidad Interamericana de Puerto Rico, 1990, pág. 53. Asimismo, y conforme nos hemos expresado en distintas ocasiones, para que éste anule un negocio jurídico, se requiere principalmente que el error sea  uno esencial y excusable. *Capó Caballero v. Ramos*, *supra,* pág. 673; Díez-Picazo, *op. cit.*, pág. 213.

   A. *Error esencial*

El error –sobre la sustancia de la cosa que fuere objeto del contrato o sobre aquellas condiciones de la misma– es esencial cuando fue determinante para la celebración del negocio por la parte contratante que lo alega. *Coop. La Sagrada Familia v. Castillo,* 107 D.P.R. 405 (1978). El error esencial incluye el error en la identidad, la materia o las cualidades esenciales de la cosa, siempre y cuando, éstas fueran especialmente tenidas en cuenta. Puig Brutau, *op. cit.*, pág. 85.  A esos efectos, lo importante es que el tribunal quede convencido de que del contratante haber conocido su error, éste no hubiese celebrado el contrato. *Coop. La Sagrada Familia v. Castillo, supra*. Asimismo, hemos expresado que "la

apreciación de la esencialidad del error requiere prueba y constancia del nexo que en cada caso tenga aquél con los fines y objeto que las partes hayan perseguido y tenido en cuenta al contratar". *Coop. La Sagrada Familia v. Castillo, supra*.

### B. Error excusable

Por otro lado, es preciso que el error sea excusable, esto es que derive de actos desconocidos del obligado sin que tal desconocimiento haya podido ser evitado con mediana prudencia o diligencia, que no sea imputable al que lo sufre. *Capó Caballero v. Ramos*, *supra*; Díez-Picazo, *op. cit.*, pág. 215. En *Capó Caballero v. Ramos*, *supra*, citando con aprobación las manifestaciones del Tribunal Supremo de España expresamos que "es mucho menos admisible el error «cuando quienes contratan *son personas peritas o conocedoras del respectivo negocio*»". *Id.*, pág. 677.

Respecto a diligencia exigible y la distribución de las cargas precontractuales de información entre las partes, Díez-Picazo expresa que:

> …cada parte debe informarse de las circunstancias y condiciones que son esenciales o relevantes para ella, desde luego en los casos en que tal información le es fácilmente accesible. La diligencia se aprecia, además, teniendo en cuenta las condiciones de las personas. Es exigible mayor diligencia cuando se trata de un profesional o de un experto. La diligencia exigible es, por el contrario, menor, cuando se trata de persona inexperta que entre en

negociaciones con un experto. Díez-Picazo, *op. cit.*, pág. 216.

Por tanto, cada parte contratante tiene el deber de informarse. No obstante, esto no limita el análisis de los tribunales sobre la diligencia y conducta de la otra parte contratante.

## IV

En el caso de autos, el acusado proveyó una identidad falsa a las autoridades y actuó en todo momento bajo tal identidad, incluso durante el periodo en el que estuvo bajo la custodia del Estado. El Estado utilizó los mecanismos acostumbrados y requeridos para corroborar la información y no advirtió la falsedad. Posteriormente, International, compañía experta en este tipo de transacciones, prestó una fianza por la cantidad de cien mil dólares ($100,000.00) en efectivo como garantía de la comparecencia del acusado tras haber confiado en la identidad provista por el Estado. Por tal motivo, se le transfirió a la fiadora su custodia.

No nos cabe duda de que el engaño cometido por el individuo lesiona tanto los intereses del Estado, que quedó imposibilitado de procesarlo criminalmente, como los intereses económicos de la compañía fiadora. No obstante, considerando el conflicto de intereses existente entre ambas partes y conforme a la jurisprudencia y la doctrina

antes descritas, debemos examinar si el error que aduce la fiadora fue uno esencial; cuál es la diligencia debida por la fiadora, y si conlleva la excusabilidad de dicho error.

   *A. Error esencial*

El objeto del contrato de fianza suscrito por International era garantizar la presentación ante el tribunal del individuo que usurpó la identidad del señor Javier De Jesús Carrillo. Estamos contestes con la determinación de que hubo error esencial respecto al objeto del contrato. Entendemos que de la fiadora haber conocido que no estaba garantizando al verdadero señor De Jesús, no hubiese celebrado el mismo porque al cambiar la identidad del sujeto cuya presencia garantizaba, los elementos a considerar para medir su riesgo se trastocaban totalmente. No obstante, **éste no es el único criterio para conceder la anulación del contrato de fianza. El error, además de ser esencial, debe ser excusable.**

   *B. Error excusable*

Para que un error en la formación de un contrato sea excusable, la parte contratante que aduce el error tiene el deber de informarse de forma diligente. Como discutiéramos anteriormente, tal deber recae sobre ambas partes.

De los hechos del caso surge que el Estado realizó la investigación correspondiente al proceso criminal en contra del fiado. Lamentablemente, a pesar de su gestión, no pudo

descubrir la falsedad de la información suministrada por el acusado. Sin embargo, aunque el Estado no logró percatarse de que el acusado había falsificado su identidad, su actuación reflejó la diligencia debida. En lo concerniente a la evaluación e investigación llevadas a cabo por OSAJ, dicha Oficina utiliza unos sistemas de información para verificar la información provista. A tenor con en el Reglamento sobre procedimientos uniformes para la evaluación, recomendación de libertad provisional, supervisión y seguimiento de imputados de delito bajo la jurisdicción de la Oficina de Servicios con Antelación al Juicio, Reglamento Núm. 5991, Departamento de Estado, 6 de julio de 1999, es ya cuando el tribunal decreta la libertad provisional del individuo **bajo la jurisdicción de OSAJ** que ésta corrobora – por medio de mecanismos adicionales e inclusive mediante investigaciones de campo – la información proporcionada, así como las recomendaciones y otros documentos posteriormente solicitados con el propósito de verificar datos personales y así determinar los niveles de supervisión requeridos para cada individuo.

Por otro lado, la fiadora simplemente descansó en la información provista por el Estado, particularmente en la denuncia, sin realizar una investigación independiente que satisficiera sus necesidades como negocio y asumió la custodia y el riesgo por la incomparecencia del acusado. La confianza que pudiera suscitarle la denuncia, documento

que puede ser enmendado por defectos de forma como defectos sustanciales, no le exime de la diligencia que le es exigible como perita. Reglas 38(a) y 38(b) de Procedimiento Criminal, *supra*, Reglas 38(a) y 38(b).

Todos los argumentos presentados por la fiadora, y avalados por la Sentencia, imponen sobre el Estado el peso de la corroboración de la identidad del acusado. Erróneamente, ésta arguye que en un contrato de fianza el Estado asume la responsabilidad contractual de identificar al imputado, sin necesidad de ésta verificarla, mientras que ella solamente se obliga a fiar y garantizar la comparecencia del fiado. Toma, por tanto, el riesgo de la incomparecencia a base de dicha información. Esto porque no es parte de la pericia requerida a este tipo de compañías la identificación de a quién fía tales sumas. No podemos avalar tales argumentos.

Precisamente, si la obligación de la fiadora consiste en fiar y garantizar la comparecencia del fiado, entonces para cumplir satisfactoriamente con esa obligación, consustancialmente, debe procurar, cuando menos, constatar la identidad del fiado. Lo anterior no requiere de una constatación empírica con bases científicas. Basta con llevar a cabo aquella gestión razonable que le permita asegurarse de que el fiado es quién dice ser. ¿Cómo una compañía fiadora puede prestar una fianza de una cantidad

sustancial de dinero sin siquiera constatar la identidad del fiado, máximo, cuando la información que le proporcionan a la fiadora antes de tomar su decisión de afianzar al acusado, denota, *prima facie*, la posibilidad de que el candidato a fianza haya falsificado su identidad o que pueda evadir la jurisdicción estatal?[7] Los argumentos de la fiadora, no sólo desconocen las distintas relaciones jurídicas existentes de un contrato de fianza, sino que ignoran el deber de informarse que tienen las partes contratantes y escudan la falta de diligencia de la fiadora tras la supuesta crasa falta de diligencia de la otra parte contratante.

Cabe señalar que a una compañía fiadora se le exige mayor diligencia por su condición de experta en la materia objeto de contrato que a una persona sin conocimiento de la misma. Como expresáramos en *Pueblo v. Martínez Hernández*, *supra*, pág. 400, n. 10, las compañías fiadoras "[p]reviendo la eventualidad de tener que pagar en caso de incomparecencia del fiado, […] le exigen [al fiado] el pago de primas y el otorgamiento de garantías colaterales para

---

[7] Como parte de la información a la que tuvo acceso la fiadora antes de tomar su decisión de afianzar al acusado, pudo inspeccionar dos tarjetas de identificación aparentemente emitidas por dos estados de los Estados Unidos con distintas direcciones, así como una tercera dirección en Puerto Rico **ofrecida verbalmente por el acusado**. Podemos razonablemente inferir que fue por esta misma falta de nexos con la comunidad, evidenciada por documentos de otros estados, que OSAJ no le ofreció a éste otros de sus servicios.

cubrir el monto de la fianza, de manera que su riesgo quede asegurado." Por tanto, no es un negocio que se realice sin las debidas salvaguardas y menos ante una suma tan considerable.

Por tanto, somos de opinión que no es suficientemente diligente una fiadora que descarga su responsabilidad de revisar datos esenciales para la formación del contrato de fianza en el Estado. Sostener lo contrario, le impondría la responsabilidad absoluta al Estado (es decir, a una de las partes contratantes) de asegurarse que la información sobre el potencial fiado sea correcta. Tal contención, refrendaría hasta la más absurda indolencia del ente fiador en procurar la corroboración de la información suministrada por el Estado sobre el candidato a ser fiado. Ese proceder no sería justo. Por eso, somos del parecer, que aunque el elemento bajo el que recayó el error era uno esencial – determinante para la celebración del negocio – éste no es un error excusable debido a la falta de diligencia exigible a una corporación que se dedica lucrativamente a ese negocio.

La Sentencia señala que lo que resuelve no autoriza a las fiadoras a no "ejercer un esfuerzo diligente y razonable para identificar adecuadamente a las personas cuya comparecencia garantizan" ni a que se interprete como "norma absoluta que exima de responsabilidad a las fiadoras

en cualquier instancia en que resulte que el fiado proveyó información falsa o cometió fraude de identidad". No obstante, es un contrasentido que no le exija tal esfuerzo a International y determine que no procede la confiscación de la fianza por ésta haber descansado tanto en la identificación – según los mecanismos disponibles – del Estado, como en que el acusado estuviera bajo su custodia por tres meses. Es decir, si este no es el caso apropiado para resolver que la fiadora no puede ser eximida de responsabilidad al no ejercer un grado mínimo de diligencia para constatar que el fiado proveyó información falsa sobre su identidad, entonces nos preguntamos ¿cuál será ese caso? ¿Hasta dónde habrá de extenderse la desidia de la fiadora para resolver que su omisión fue inexcusable? Además, la Sentencia tiene el efecto de descargar totalmente sobre el Estado el deber de informarse que ambos contratantes se supone compartan como parte de la diligencia debida en la formación de todo contrato.

De forma alguna deseamos que se interprete que todo el peso sobre la identidad del fiador recae en la fiadora simplemente porque ésta deriva lucro de dicho negocio. Somos conscientes de que una fiadora diligente puede no percatarse de este tipo de error como le sucedió al Estado. No obstante, la fiadora debe demostrar actuaciones diligentes que sean, a su vez, evaluadas al tenor con los

hechos de cada caso.   Éstas no están presentes en el caso de autos.

De los hechos y admisiones de International surge que ésta no llevó a cabo ninguna averiguación independiente de la información suministrada, esencial para el contrato, y por la que asumió un riesgo por la suma de cien mil dólares ($100,000).  Asimismo, se desentendió del imputado hasta que el Tribunal de Primera Instancia le notificó una Orden para Mostrar Causa ante la incomparecencia del individuo al juicio en su fondo, fecha en que la fiadora admite que comenzó su investigación para dar con su paradero y por la que se enteró de que la identidad suministrada por éste era falsa. La investigación que realizó la fiadora en este caso luego de su incumplimiento, que incluyó la visita a la residencia informada por el acusado y por la que se enterara de la falsa identidad provista, no puede considerarse como una gestión extraordinaria.  Esto máxime cuando la fiadora decidió no corroborar previamente la dirección de la residencia en Puerto Rico a pesar de haber tenido acceso a esta información y cuando solamente contaba con dos identificaciones vigentes del acusado – que fueran supuestamente expedidas por los estados de Nevada y California y en las que aparecían direcciones del acusado en ambos estados. Ante este cuadro somos de opinión que la gestión mínima que podía realizar la compañía fiadora era verificar la dirección provista por el acusado dada la

inexistencia de una identificación que contara con una dirección física en Puerto Rico.

Ahora, sin embargo, ésta solicita que se le exonere del cumplimiento de su obligación puesto que prestó tal fianza confiando en la información provista por el Estado en la denuncia que, según alega, tiene el deber contractual de identificar al fiado.

El error en la formación del contrato pudo haberse evitado por el ejercicio de una diligencia razonable a la hora de contratar sus servicios. La fiadora, que se lucra por la asunción del riesgo de la no comparecencia de los acusados al sustituir al Estado, asumió un riesgo y solicitó la custodia del acusado, quien de otra forma hubiese permanecido bajo la custodia del Estado dentro de los límites constitucionales. No podemos sancionar el que el Estado asuma este riesgo por la falta de diligencia de la fiadora, particularmente cuando se presume que ésta es experta en la materia. Es por su condición de experta que ésta determina los riesgos que toma, así como los medios e información que utiliza para evaluarlos. En este caso erróneamente descansó en el supuesto de que no le corresponde contractualmente identificar ni investigar a quién fiaba. Asimismo, International expresó que luego de haber evaluado la información provista por el Estado,

consideró que ésta era razonablemente confiable para prestar dicha fianza.

Sería ingenuo de nuestra parte liberar del pago de la fianza a una compañía especialista en la materia que fía a un individuo por semejante cantidad en las circunstancias antes descritas. Tal proceder podría tener efectos nocivos en los contratos de fianza criminal, pudiendo prestarse para un uso inescrupuloso que, además, impone al Estado todas las consecuencias. Al fin y al cabo, nuestra postura es cónsona con el raciocinio lógico e inteligible de que para cumplir con determinada obligación, es preciso realizar ciertos actos para lograr su consecución.

En esencia, estamos contestes con la Sentencia dictada con relación a que el error en la identidad del acusado es uno de carácter esencial o sustancial en la formación del contrato de fianza. No obstante, disentimos por entender que el error sufrido en el caso de autos no es uno excusable. La fiadora no demostró ni un mínimo de diligencia al momento de su formación. Por tanto, concluimos que tal error no anula el referido contrato.

V

Por los argumentos antes expresados, disiento respetuosamente de la Sentencia emitida por el Tribunal. El Tribunal de Apelaciones actuó correctamente al confirmar

la sentencia de confiscación de la fianza. No se puede responsabilizar al Estado por un riesgo asumido por la aseguradora.


Mildred G. Pabón Charneco
Jueza Asociada